**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE PLATINUM AND PALLADIUM ANTITRUST LITIGATION | Lead Case No. 14-cv-9391 Hon. Gregory H. Woods |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANTS' MOTION TO STAY DISCOVERY**

# <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ..................................................................................................................1

BACKGROUND ..................................................................................................................1

ARGUMENT ......................................................................................................................4

    I.   Defendants Have Not Met Their Burden to Demonstrate Good Cause
        for a Stay of the Limited Discovery Requested by Plaintiffs .............................6

        A.   Plaintiffs' Claims are Meritorious................................................................8

        B.   Plaintiffs Seek Only Narrow Discovery at This Stage of the Proceedings ...............10

        C.   Plaintiffs Will Suffer Prejudice ..............................................................12

    II.  Defendants' Concerns Regarding Data Privacy and Confidentiality Are
        Overblown and Fail to Justify the Imposition of a Stay ....................................14

CONCLUSION.................................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

CASES                                                                    PAGE(S)

*ADL, LLC v. Tirakian*,
    No. CV 2006-5076 (SJF), 2007 WL 1988751 (E.D.N.Y. July 5, 2007) ...................................5

*Alford v. City of New York*,
    No. 11 Civ. 622 (ERK) (MDG), 2012 WL 947498 (E.D.N.Y. Mar. 20, 2012)........................9

*AMW Materials Testing, Inc. v. Town of Babylon*,
    215 F.R.D. 67 (E.D.N.Y. 2003) ...........................................................................................7

*Bailey et al. v. BASF Metals Ltd. et al.*,
    No. 15-cv-1712, ECF No.1 (Mar. 11, 2015)......................................................................1, 10

*In re Bank of Am. Corp. Sec. Derivative & Employment Ret. Income Sec. Act*
    *(ERISA) Litig.*,
    09 MDL 2058, 2009 WL 4796169 (S.D.N.Y. Nov. 16, 2009) ...............................................11

*In re Capacitors Antitrust Litig.*,
    No. 14-cv-3264, ECF No. 514 (N.D. Cal. Jan. 15, 2015)...................................................5, 11

*In re Chase Manhattan Corp. Sec. Litig.*,
    No. 90 CIV. 6092 (LMM), 1991 WL 79432 (S.D.N.Y. May 7, 1991) ...................................9

*City of Aurora, Colo. v. PS Sys., Inc.*,
    No. CIV.A. 07-CV-02371-W, 2008 WL 149998 (D. Colo. Jan. 14, 2008)..............................8

*In re Currency Conversion Fee Antitrust Litig.*,
    No. MDL 1409 (WHP), 2002 WL 88278 (S.D.N.Y. Jan. 22, 2002) .............................. *passim*

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,
    No. 09-cv-03690 (N.D. Ill.) (Hibbler, J.) ECF No. 75 at pp. 4-5 .............................................5

*Diaz v. Local 338 of Retail, Wholesale Dep't Store Union, United Food &*
    *Commercial Workers*,
    No. 13-CV-7187 SJF SIL, 2014 WL 4384712 (E.D.N.Y. Sept. 3, 2014) ...............................4

*Evans v. Yum Brands, Inc.*,
    326 F. Supp. 2d 214 (D.N.H. 2004)........................................................................................4

*In re Firstenergy Corp. Sec. Litig.*,
    229 F.R.D. 541 (N.D. Ohio 2004) ........................................................................................10

*In re Foreign Exchange Benchmarks Antitrust Litig.*,
    No. 13-cv-7789, ECF No. 274 (S.D.N.Y. Mar. 23, 2015).....................................................11

*In re Graphics Processing Units Antitrust Litig.*,
  No. C 06-07417 WHA, 2007 WL 2127577 (N.D. Cal. July 24, 2007) ...................................5

*Gray v. First Winthrop Corp.*,
  133 F.R.D. 39 (N.D. Cal. 1990)........................................................................................7, 8

*Hachette Distrib., Inc. v. Hudson County News Co., Inc.*,
  136 F.R.D. 356 (E.D.N.Y. 1991) .........................................................................................7

*In re High-Tech Employee Antitrust Litig.*,
  856 F. Supp. 2d 1103 (N.D. Cal. 2012) ...............................................................................5

*Howard v. Galesi*,
  107 F.R.D. 348 (S.D.N.Y. 1985) .........................................................................................7

*Johnson v. N.Y.U. Sch. of Educ.*,
  205 F.R.D. 433 (S.D.N.Y. 2002) .........................................................................................8

*Kassover v. UBS A.G.*,
  No. 08 Civ. 2753 (LMM), 2008 WL 5395942 (S.D.N.Y. Dec. 19, 2008) ....................5, 8, 10

*In re LaBranche Sec. Litig.*,
  333 F. Supp. 2d 178 (S.D.N.Y. 2004)..........................................................................11, 13

*Lasala v. Needham & Co.*,
  399 F. Supp. 2d 421 (S.D.N.Y. 2005).................................................................................12

*In re Lithium Ion Batteries Antitrust Litig.*,
  13-md-2420, ECF No. 346 (N.D. Cal. Dec. 6, 2013) ............................................................5

*Lyell Theatre Corp. v. Loews Corp.*,
  682 F.2d 37 (2d Cir. 1982)................................................................................................12

*Moran v. Flaherty*,
  No. 92 Civ. 3200 (PKL), 1192............................................................................................5

*New England Carpenters Health & Welfare Fund v. Abbott Labs.*,
  12 C 1662, 2013 WL 690613 (N.D. Ill. Feb. 20, 2013).......................................................4, 5

*Osan Ltd. v. Accenture LLP*,
  No. 05 Civ. 5048 (MDG), 2006 WL 1662612 (E.D.N.Y. June 13, 2006)................................9

*Pension Trust Fund for Operating Eng'rs v. Assisted Living Concepts, Inc.*,
  943 F. Supp. 2d 913 (E.D. Wis. 2013)...........................................................................13, 14

*In re Plastics Additives Antitrust Litig.*,
  No. 03-2038, 2004 WL 2743591 (E.D. Pa. Nov. 29, 2004) ...................................................5

*In re Platinum and Palladium Commodities Litig.*,
No. 10 Civ. 3617 (WHP), ECF No. 59, at *1-2 (S.D.N.Y. Nov. 30, 2010) ...........................5

*Rawat v. Navistar Int'l Corp.*,
No. 08 C 4305, 2011 WL 3876957 (N.D. Ill. Sept. 1, 2011) *aff'd*, No. 08-CV-
04305, 2011 WL 6097772 (N.D. Ill. Dec. 5, 2011) ...................................................................6

*Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.*,
No. H-08-CV-0857, 2008 WL 8465061 (S.D. Tex. Aug. 11, 2008) .........................................6

*In re Royal Ahold N.V. Sec. & Erisa Litig.*,
220 F.R.D. 246 (D. Md. 2004).................................................................................................14

*SEC v. Jones*,
04 Civ. 4385, 2005 WL 2837462 (S.D.N.Y. Oct. 28, 2005) ...................................................12

*Seippel v. Sidley, Austin Brown & Wood LLP*,
03 Civ. 6942 (SAS), 2005 WL 388561 (S.D.N.Y. Feb. 17, 2005) ....................................11, 13

*Spring Valley Water Co. v. Cosco Indus., Inc.*,
No. 91 Civ. 0410 (PKL), 1992 WL 8230 (S.D.N.Y. Jan. 10, 1992).......................................10

*Tamburo v. Dworkin*,
No. 04 C 3317, 2010 WL 4867346 (N.D. Ill. Nov. 17, 2010) ...................................................5

*In re Term Commodities Cotton Futures Litig.*,
No. 12 Civ. 5126 (ALC), 2013 WL 1907738 (S.D.N.Y. May 8, 2013) ..................................13

*In re Vitamin C Antitrust Litig.*,
237 F.R.D. 35 (E.D.N.Y. 2006) ..........................................................................................5, 10

*Waltzer v. Conner*,
No. 83 Civ. 8806, 1985 WL 2522 (SWK), at *1 (S.D.N.Y. Sept. 12, 1985)..........................10

*Weizel v. Main Street Connect, LLC*,
No. 12 Civ. 831, 2012 WL 3937007 (D. Conn. Aug. 28, 2012)...............................................9

**Rules**

Federal Rule of Civil Procedure 15 ...........................................................................................12

Federal Rule of Civil Procedure 26 ........................................................................................6, 8

Federal Rule of Civil Procedure 34 .............................................................................................4

## INTRODUCTION

Defendants seeking to halt the discovery process bear a heavy burden of demonstrating good cause why such a stay should be granted.  This burden is especially high where, as here, plaintiffs have agreed to limit discovery during the pendency of anticipated motions to dismiss. to the following two categories of documents: (1) documents being assembled and produced (and documents already assembled and produced) to U.S. government regulators related to trading of platinum and palladium; and (2) defendants' transaction data concerning their trades of platinum, palladium, and their respective financial derivatives.  Permitting this limited and tailored discovery—which entails minimal burden on defendants— strikes an appropriate balance between the efficient resolution of this case and the avoidance of unnecessary expense.

## BACKGROUND

For many years, defendants BASF Metals Limited, Goldman Sachs International, HSBC Bank USA, N.A., and Standard Bank Plc convened via private conference call to set the worldwide benchmark prices for platinum and palladium (the "Platinum and Palladium Fixings" or "Fixings").  The Platinum and Palladium Fixings were conducted under the auspices of The London Platinum and Palladium Fixing Co. Ltd. ("LPPFC")—an organization that was in essence, controlled and run by the defendants for the sole purpose of conducting and publicly publishing the Fixings.  Although the Fixings—the LPPFC's published prices—were held out as derived from an impartial auction system, ample evidence exists that the defendants utilized the private conference calls and their massive physical and derivative positions in platinum and palladium to manipulate the prices of platinum and palladium to their own advantage.  *See* ECF No. 1; *Bailey et al. v. BASF Metals Ltd. et al.*, No. 15-cv-1712, ECF No.1 (Mar. 11, 2015).

In early 2014, it came to light that multiple foreign regulators were looking into the manipulation of gold and silver prices and a multitude of lawsuits were filed in the U.S. related to gold and silver benchmark prices.  As foreign government investigations continued, the Platinum and Palladium Fixings also came under scrutiny.  On November 25, 2014, plaintiffs Modern Settings LLC (a New York LLC) and Modern Settings LLC (a Florida LLC) filed the first complaint alleging that defendants colluded to manipulate the prices of platinum and palladium, and their respective financial derivative products, in violation of U.S. antitrust and commodities laws.  Thereafter, complaints containing substantially similar allegations were filed. On March 20, 2015, this Court entered Case Management Order No. 1 consolidating all of the complaints and appointing the undersigned Interim Co-Lead Class Counsel.  *See* ECF No. 32.

Since the time that the first complaint was filed in November 2014, it has become public knowledge that the U.S. Department of Justice ("DOJ") had opened a criminal investigation and the U.S. Commodities Futures Trading Commission ("CFTC") had opened a civil investigation into the manipulation of precious metals prices including benchmark prices for platinum and palladium.[1]  Several banks are under scrutiny, including defendants Goldman Sachs, HSBC, and Standard Bank.  *Id.*  The DOJ and CFTC have issued document requests and subpoenas in connection with these investigations and at least one bank defendant—HSBC[2]—has publically reported that it is cooperating with these requests.[3]  The DOJ and CFTC investigations are in addition to investigations into precious metals prices being conducted by foreign regulatory

---

[1] *See* Jean Eaglesham and Christopher M. Matthews, *Big Banks Face Scrutiny Over Pricing of Metals*, THE WALL STREET JOURNAL (Feb. 23, 2015), *available at* http://www.wsj.com/articles/big-banks-face-scrutiny-over-pricing-of-metals-1424744801.

[2] Defendants argue that because HSBC was involved in manipulating three different benchmark rates this should somehow weigh in favor of granting a discovery stay here.  Def. Br. at n.5.  But HSBC should not be rewarded for its additional misconduct.

[3] *See* HSBC 2014 Form 10-k at 240 (filed on Feb. 23, 2015).

authorities.[4]  Similar investigations into the manipulation of foreign exchange and LIBOR benchmarks (involving several of the defendants in this case) have proved fruitful leading to billions of dollars in settlements to date.[5]

A Senate Report has also recently concluded that commodity activities by large banks are "permeate[d]" by "conflicts of interest."[6]  The Senate Report documented conduct strikingly similar to that alleged by plaintiffs across a wide range of commodities.  Across the activities investigated, "financial companies often traded in both the physical and financial markets at the same time, with respect to the same commodities, frequently using the same traders on the same trading desk.  In some cases, after purchasing a physical commodity business, the financial

---

[4] *See, e.g.*, Jan Harvey, *Swiss regulator flags attempt to manipulate bullion benchmarks*, REUTERS (Nov. 12, 2014), *available at* http://www.reuters.com/article/2014/11/12/banks-forex-settlement-gold-idUSL6N0T22Z420141112); Joshua Franklin, *Swiss watchdog says looking at possible gold market manipulation*, REUTERS (Feb. 24, 2015) (noting that Swiss competition commission WEKO is looking into manipulation in multiple precious metals markets), *available at* http://www.reuters.com/article/2015/02/24/swiss-banks-probe-idUSFWN0VY02X20150224.

[5] *See, e.g.*, Ben Protess, *Bank of New York Mellon Will Settle Currency Trade Case for $714 Million*, The New York Times (Mar. 19, 2015), *available at* http://www.nytimes.com/2015/03/20/business/dealbook/bank-of-new-york-mellon-to-pay-714-million-in-foreign-exchange-settlement.html?_r=0; Daniel Schafer, *Regulators slap $4.3bn fines on six banks in global forex probe* (Nov. 12, 2014), *available at* http://www.ft.com/intl/cms/s/0/aa812316-69be-11e4-9f65-00144feabdc0.html#slide0; Lianna Brinded, *Libor and FX Fixing: HSBC Stake Sold by Fund Manager Neil Woodford* (Sept. 1, 2014), *available at* http://www.ibtimes.co.uk/libor-fx-fixing-hsbc-stake-sold-by-famous-fund-manager-over-possible-fines-1463408; Gavin Finch and Michael J. Moore, *Goldman Sachs Under Investigation in Currency Probe*, BLOOMBERG (Nov. 7, 2013), *available at* http://www.bloomberg.com/news/articles/2013-11-07/goldman-sachs-is-under-investigation-in-currency-probe.

[6] U.S. Senate Permanent Subcommittee on Investigations, Committee on Homeland Security and Governmental Affairs, *Wall Street Bank Involvement with Physical Commodities* ("Senate Report") (Nov. 18, 2014), *available at* www.hsgac.senate.gov/download/report-wall-street-involvement-with-physical-commodities.

holding company ramped up its financial trading. . . . In some cases, financial holding companies used their physical commodity activities to influence or even manipulate commodity prices."[7]

## **ARGUMENT**

The Federal Rules of Civil Procedure seek the expeditious discovery and resolution of cases. They do not intend discovery delays for motions to dismiss—much less for anticipated motions to dismiss a pleading that defendants have not even received.[8] "In potential class actions, like in other kinds of litigation, '[c]ourts generally frown on motions to stay discovery and deny them in the absence of compelling reasons.'" *Evans v. Yum Brands, Inc.*, 326 F. Supp. 2d 214, 226 (D.N.H. 2004) (quoting *Newberg on Class Actions* § 9:43 (4th ed. 2002) and citing other cases).

The regular practice in this District is to allow discovery to proceed during the pendency of a motion to dismiss. *See* Report of the Judicial Improvements Committee, Pilot Project Regarding Case Management Techniques for Complex Civil Cases, page 4, Part II.A (Oct. 2011) ("discovery of documents, electronically stored information and tangible things may proceed pursuant to Rule 34, but all other discovery with respect to any claim that is the subject of the [dispositive] motion is stayed pending the Court's decision on the motion"). Even in complex cases the "imposition of a stay is not appropriate simply on the basis that a motion to dismiss has been filed, as the Federal Rules make no such provision." *In re Currency Conversion Fee Antitrust Litig.*, No. MDL 1409 (WHP), 2002 WL 88278, at *1 (S.D.N.Y. Jan. 22, 2002); *see also Diaz v. Local 338 of Retail, Wholesale Dep't Store Union, United Food & Commercial*

---

[7] Senate Report, at 5.

[8] *See, e.g.*, *New England Carpenters Health & Welfare Fund v. Abbott Labs.*, 12 C 1662, 2013 WL 690613 (N.D. Ill. Feb. 20, 2013) ("Had the Federal Rules contemplated that a motion to dismiss under Fed.R.Civ.P. 12(b)(6) would stay discovery, the Rules would contain a provision to that effect. In fact, such a notion is directly at odds with the need for expeditious resolution of litigation.").

*Workers*, No. 13-CV-7187 SJF SIL, 2014 WL 4384712, at *2 (E.D.N.Y. Sept. 3, 2014) (same);

*Moran v. Flaherty*, No. 92 Civ. 3200 (PKL), 1192 WL 276913, at *1 (S.D.N.Y. Sept. 25, 1992)

(same). In antitrust, commodities, and other class action cases, courts in this District and

elsewhere routinely allow discovery to proceed during the pendency of motions to dismiss.[9]

    Contrary to defendants' assertions, *see* Def. Br. at 6, *Twombly* and *Iqbal* do not bar

discovery during the adjudication of a motion to dismiss. *See Tamburo v. Dworkin*, No. 04 C

3317, 2010 WL 4867346, at *2 (N.D. Ill. Nov. 17, 2010) ("*Twombly* and *Iqbal* do not dictate that

a motion to stay should be granted every time a motion to dismiss is placed before the Court . . .

the Court is not persuaded that this case presents a need for departure from the general rule that a

pending garden-variety motion to dismiss does not warrant a stay of discovery"). Indeed, even a

case relied on by defendants held that *Twombly* and *Iqbal* do not bar discovery during the

pendency of a motion to dismiss. *See In re Graphics Processing Units Antitrust Litig.*, No. C 06-

07417 WHA, 2007 WL 2127577, at *3-4 (N.D. Cal. July 24, 2007) ("[*Twombly*] used concerns

---

[9]    *See In re Capacitors Antitrust Litig.*, No. 14-cv-3264, ECF No. 514 (N.D. Cal. Jan. 15,
2015) (ordering limited discovery on eight topics); *In re Lithium Ion Batteries Antitrust Litig.*,
13-md-2420, ECF No. 346 (N.D. Cal. Dec. 6, 2013) (ordering production of grand jury
documents "to help move the litigation along"); *New England Carpenters Health & Welfare
Fund*, 2013 WL 690613 (all discovery); *In re High-Tech Employee Antitrust Litig.*, 856 F. Supp.
2d 1103, 1113 (N.D. Cal. 2012) (documents produced to DOJ); *In re Platinum and Palladium
Commodities Litig.*, No. 10 Civ. 3617 (WHP), ECF No. 59, at *1-2 (S.D.N.Y. Nov. 30, 2010)
(not overly burdensome to produce "approximately 250,000 pages" of documents that had been
produced to CFTC); *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, No. 09-cv-03690
(N.D. Ill.) (Hibbler, J.) ECF No. 75 at pp. 4-5 (ordering production of previously produced
CFTC documents; defendants' production totaled more than approximately 217,000 pages);
*Kassover v. UBS A.G.*, No. 08 Civ. 2753 (LMM), 2008 WL 5395942, at *1, *4-5 (S.D.N.Y. Dec.
19, 2008) (documents produced to government authorities); *ADL, LLC v. Tirakian*, No. CV
2006-5076 (SJF), 2007 WL 1988751, at *3 (E.D.N.Y. July 5, 2007) (documents produced in
prior action); *In re Vitamin C Antitrust Litig.*, 237 F.R.D. 35, 37 (E.D.N.Y. 2006) (all discovery);
*In re Plastics Additives Antitrust Litig.*, No. 03-2038, 2004 WL 2743591, at *10-12 (E.D. Pa.
Nov. 29, 2004) (documents produced to DOJ); *Currency Conversion*, 2002 WL 88278, at *1 (all
documents).

about the breadth and expense of antitrust discovery to identify pleading standards for

complaints, it did not use pleading standards to find a reason to foreclose all discovery").[10]

## I.   Defendants Have Not Met Their Burden to Demonstrate Good Cause for a Stay of the Limited Discovery Requested by Plaintiffs

Defendants must *demonstrate* "good cause" for staying discovery.  Fed. R. Civ. P. 26(c).

Defendants concede that there is no search burden and only assert that production of documents

already produced to U.S. government regulators would necessitate "re-review" and a "host of

foreign legal issues."  *See* Def. Mem. of Law. in Support of Their Mot. to Stay Discovery, ECF

No. 31, at 10-12 (Mar. 19, 2015) ("Def. Br.").  But defendants' brief is completely devoid of

*specific facts* (such as estimated cost, time, number of documents, form of documents,

searchability of documents, or specific foreign laws at issue)[11] to *demonstrate* how the limited

---

[10] Defendants cite to *In re Aluminum Warehousing Antitrust Litigation* as an example of where resources were wasted because a Court in this District allowed discovery to proceed pending motions to dismiss in a complex case.  No. 13-md-2481-KPF (S.D.N.Y.).  However, just last week, Judge Forrest denied defendants' renewed motions to dismiss noting that the limited discovery the Court had allowed "sharpened [plaintiffs'] story and substantive claims."  *See id.* at ECF No. 733 at 2-3 (S.D.N.Y. Mar. 26, 2015).  Thus, although motion practice sometimes can shape the "scope of discovery," Def. Br. at 9, that is only half the story.  The scope of discovery can also be shaped *by discovery itself.*  Thus, allowing plaintiffs' to take limited discovery during the motion to dismiss may—as in *Aluminum Warehousing*—allow plaintiffs' to sharpen their claims early on and *lessen* the ultimate burden and cost of discovery on defendants here.

[11] Defendants cite to *Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.*, No. H-08-CV-0857, 2008 WL 8465061, at *1 (S.D. Tex. Aug. 11, 2008) in support of their burden argument.  Def. Br. at 9, 12.  But the defendants in *Rio Grande* submitted a declaration demonstrating that production of the requested documents would cost "hundreds of thousands of dollars" and would involve "many of hundreds of hours of review time."  *Rio Grande*, 08-cv-00857, Docket No. 19-2 (Declaration of David J. Hill).  Defendants submitted nothing even remotely similar here and instead blithely assert that plaintiffs' limited discovery would cost "millions of shareholder dollars."   Def. Br. at 2.  Defendants' counsel's speculation is insufficient to demonstrate good cause and this strongly weighs against a stay.  *See, e.g.*, *Rawat v. Navistar Int'l Corp.*, No. 08 C 4305, 2011 WL 3876957, at *9 (N.D. Ill. Sept. 1, 2011) *aff'd*, No. 08-CV-04305, 2011 WL 6097772 (N.D. Ill. Dec. 5, 2011) ("The company has already produced these once, and it provides no information on what it would have to do to comply with Plaintiffs' request. Navistar does not state, for example, whether a copy of its earlier production

discovery requested by plaintiffs would be burdensome.  Such conclusory arguments are insufficient because good cause "requires a showing of *facts* militating in favor of the stay," *Currency Conversion*, 2002 WL 88278, at *1 (emphasis added), and demonstrating "a particular need for protection."[12] *Gucci Am., Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 64 (S.D.N.Y. 2010); *see also AMW Materials Testing, Inc. v. Town of Babylon*, 215 F.R.D. 67, 72 (E.D.N.Y. 2003) ("[t]o show good cause, particular and specific facts must be established rather than conclusory assertions").  Notably, defendants do not argue that their anticipated motions to dismiss will be "pure legal motion[s]."  *Currency Conversion*, 2002 WL 88278, at *2 (denying defendants' motion to stay discovery in part because "they do not challenge the [] claims on pure questions of law, but simply on the sufficiency of the facts alleged to support the claims").[13]  And defendants offer no explanation as to why the regular process of "attack[ing] discovery requests by means of objections" is insufficient to address defendants' concerns with plaintiffs' limited discovery.  *Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D. Cal. 1990).

Factors that the Court should consider in determining whether defendants have shown good cause include, "(1) a strong showing, by the defendants, that the plaintiffs' claim(s) lack merit; (2) the breadth of the discovery demanded and the burden of responding to it; and (3) the

---

already exists, what records of its production were retained, or other specific information concerning the burden of responding to Plaintiffs.").

[12] The defendants here are large corporate entities who have corporate legal departments, teams of excellent defense counsel, and vast resources at their disposal.  This fact should be taken into consideration when considering both the burden of plaintiffs' limited discovery and whether there is a particular need for protection.

[13] *See also Hachette Distrib., Inc. v. Hudson County News Co., Inc.*, 136 F.R.D. 356, 358 (E.D.N.Y. 1991) ("[d]iscovery should be stayed, however, only when there are no factual issues in need of further immediate exploration, and the issues before the Court are purely questions of law that are potentially dispositive"); *Howard v. Galesi*, 107 F.R.D. 348, 350-51 (S.D.N.Y. 1985) ("the pending motion to dismiss is not necessarily dispositive since it concerns the particularity of the pleadings, which may be amended").

risk of unfair prejudice to the plaintiff." *Kassover*, 2008 WL 5395942, at \*4, \*5. Each of these factors weighs against imposing a complete stay of discovery in this case.

### A.     Plaintiffs' Claims are Meritorious

Defendants primary argument is that discovery should be stayed because they plan to file motions to dismiss plaintiffs' still to be served consolidated amended complaint. *See* Def. Br. at 6-9. As discussed above, the anticipated filing of a motion to dismiss alone is not grounds for stay of discovery and Defendants have not made a strong showing that plaintiffs' claims lack merit.[14] *See Currency Conversion*, 2002 WL 88278, at \*2 (merely providing in "skeletal form the grounds on which [defendants] intend to dismiss . . . does not militate in favor of a stay"); *Gray*, 133 F.R.D. at 40 ("Defendants have done no more than to argue in conclusory fashion that their motions to dismiss—some of which are yet to be filed—will succeed . . . [i]dle speculation does not satisfy Rule 26(c)'s good cause requirement. Such general arguments could be said to apply to any reasonably large civil litigation. If this court were to adopt defendants' reasoning, it would undercut the Federal Rules' liberal discovery provisions"). Moreover, "motions to dismiss are denied more often than they result in the termination of a case." *City of Aurora, Colo. v. PS Sys., Inc.*, No. CIV.A. 07-CV-02371-W, 2008 WL 149998, at \*2 (D. Colo. Jan. 14, 2008).

Plaintiffs are confident that the well-researched and thorough allegations both in their original complaints and in their forthcoming consolidated amended complaint, supported by extensive economic and other evidence, more than satisfy their pleading burden and will entirely

---

[14] Defendants cite to *Johnson v. N.Y.U. Sch. of Educ.*, 205 F.R.D. 433 (S.D.N.Y. 2002) to argue that good cause exists when a motion to dismiss has substantial grounds or does not appear to be without foundation in law,  Def. Br. at 4, 6, but *Johnson* is a three paragraph opinion with limited legal reasoning.  205 F.R.D. at 434.  *Id.  Johnson* also noted that the strength of the motion to dismiss (and whether or not it is purely legal) is simply one factor that the district court may consider in deciding whether a stay of discovery is warranted.  *Id.*  Further, in *Johnson* the plaintiff sought "an extensive set of interrogatories . . . covering a span of more than five years." *Id.*  Plaintiffs here make no such request.

(or at least in substantial part) survive any motion to dismiss.  Indeed, the DOJ and CFTC investigations that have recently come to light and the Senate Report confirm plaintiffs' allegations.[15]

Because this case is very likely to move forward, it is in the interests of efficiency to permit limited document discovery to proceed in parallel with the DOJ and CFTC investigations during the significant time it will take to brief (and, respectfully, to thoughtfully adjudicate) the anticipated motions to dismiss these consolidated cases.  *See Alford v. City of New York*, No. 11 Civ. 622 (ERK) (MDG), 2012 WL 947498, at *1-2 (E.D.N.Y. Mar. 20, 2012) (where court is "doubtful that defendants will succeed in dismissing all of the claims against them" it weighs in favor of discovery proceeding).[16]  As noted above, *supra* at n.9, allowing limited discovery now may in fact *decrease* the ultimate burden and cost of discovery.

Defendants' argument that plaintiffs might be seeking this limited discovery to bolster the allegations of a sparse complaint is baseless.  *See* Def. Br. at 13-14.  Any concern that plaintiffs are hoping to discover facts that would make their claims plausible ignores the detailed allegations and independently developed evidence contained in the initial complaints that were

---

[15] Defendants make much of the fact that Judge Caproni stayed discovery pending the motions to dismiss similar actions relating to manipulation of gold and silver prices.  *See* Def. Br. at 1, 5, 11.  First, Judge Caproni's decision is not binding on this Court.  Second, at the time that Judge Caproni made those decisions the fact that the DOJ and CFTC had instituted formal investigations into precious metals pricing had not yet become public knowledge.

[16] *See also Osan Ltd. v. Accenture LLP*, No. 05 Civ. 5048 (MDG) , 2006 WL 1662612, at *1 (E.D.N.Y. June 13, 2006) (denying motion to stay because "[w]hile defendants may have substantial arguments for dismissal of several of the claims, this Court is doubtful that defendants will succeed in dismissing the entire lawsuit"); *Weizel v. Main Street Connect, LLC*, No. 12 Civ. 831, 2012 WL 3937007, at *1 (D. Conn. Aug. 28, 2012) (denying defendant's motion to stay discovery because of prejudice to plaintiffs, lack of burden to defendant, and "defendant has not made a showing that the plaintiff's claim is meritless"); *In re Chase Manhattan Corp. Sec. Litig.*, No. 90 CIV. 6092 (LMM), 1991 WL 79432 (S.D.N.Y. May 7, 1991) ("Should the complaint . . . be sustained . . . commencement of the discovery process, while no doubt imposing some burden on defendants, will advance the ultimate disposition of this action.").

filed.  *See* ECF No. 1; *Bailey et al. v. BASF Metals Ltd. et al.*, No. 15-cv-1712, ECF No.1 (Mar.

11, 2015); *see also In re Firstenergy Corp. Sec. Litig.*, 229 F.R.D. 541, 545 (N.D. Ohio 2004)

(no evidence that plaintiff was using discovery as a "fishing expedition to find a sustainable

claim" when "complaint alleges facts that [plaintiff] found independently in support of its

claims").

### B.    Plaintiffs Seek Only Narrow Discovery at This Stage of the Proceedings

Defendants assert that responsive documents are likely to be found in foreign countries

and production will necessitate compliance with foreign privacy laws.  *See* Def. Br. at 2, 10-12.

But such speculative claims are insufficient to establish "good cause" to stay all discovery.

*Kassover*, 2008 WL 5395942, at *1; *see also Spring Valley Water Co. v. Cosco Indus., Inc.*, No.

91 Civ. 0410 (PKL), 1992 WL 8230, at *3 (S.D.N.Y. Jan. 10, 1992) ("[T]his Court is loathe to

grant a stay of discovery based on the speculative assertions of the movant."); *Waltzer v. Conner*,

No. 83 Civ. 8806, 1985 WL 2522 (SWK), at *1 (S.D.N.Y. Sept. 12, 1985) (denying motion to

stay discovery and stating that bare assertions of "'[b]urdensome and oppressive' is a shibboleth

of little value to th[e] Court" and "good cause is not necessarily established solely by showing

that discovery may involve inconvenience and expense").  And the fact that discovery might

prove to be more difficult in this case due to foreign defendants is "all the more reason to make

an early start."  *Vitamin C Antitrust Litig.*, 237 F.R.D. at 37 (ordering discovery from Chinese

defendants during pendency of defendants' anticipated motions to dismiss).

Plaintiffs have agreed to tailor the scope of discovery to: (1) documents that defendants

are gathering and producing (or have already gathered and produced) to U.S. government

regulators concerning trading of platinum and palladium; and (2) defendants' transaction data

concerning their trades of platinum, palladium, and their respective financial derivatives.  Courts

have found that discovery of documents that have already been gathered and produced does not pose the burden or expense to warrant a stay.  *See supra* n.8.  Courts have even repeatedly lifted the statutorily-mandated PSLRA automatic discovery stay when plaintiffs seek discovery of such documents.[17]  Indeed, since defendants have likely already gathered and produced documents to U.S. authorities or are in the process of doing so, most—if not all—of the work of producing foreign documents and complying with foreign privacy laws has already been expended.

Similarly, the production of transaction data imposes no significant obstacle for defendants, as all likely have sophisticated data retention software from which they can access transaction data with relative ease.  Moreover, the production of transaction data would not impose an obstacle to the DOJ's and CFTC's ongoing investigations.  In fact, even while requesting stays on other discovery, the DOJ frequently does not oppose plaintiffs' access to transaction data.  *See, e.g., In re Capacitors Antitrust Litig.*, No. 14-cv-3264, ECF No. 514 (N.D. Cal. Jan. 15, 2015) (permitting discovery relating to defendants' transaction data); *In re Foreign Exchange Benchmarks Antitrust Litig.*, No. 13-cv-7789, ECF No. 274 (S.D.N.Y. Mar. 23, 2015) (court-endorsed DOJ letter permitting plaintiffs to "seek transaction data from both settling and non-settling Defendants").

---

[17] *See In re Bank of Am. Corp. Sec. Derivative & Employment Ret. Income Sec. Act (ERISA) Litig.*, 09 MDL 2058, 2009 WL 4796169, at *3 (S.D.N.Y. Nov. 16, 2009) (where defendant had "already collected, reviewed, and organized the documents for production in other proceedings, the burden of making another copy for plaintiffs here will be slight"); *Seippel v. Sidley, Austin Brown & Wood LLP*, 03 Civ. 6942 (SAS), 2005 WL 388561, at *1 (S.D.N.Y. Feb. 17, 2005) ("courts have lifted the [PSLRA] stay as to documents which already been produced to the government"); *In re LaBranche Sec. Litig.*, 333 F. Supp. 2d 178, 181, 183 (S.D.N.Y. 2004) (reviewing securities cases where PSLRA automatic discovery stay was lifted during pendency of motion to dismiss because materials had previously been produced to the government).

### C.      Plaintiffs Will Suffer Prejudice

Further weighing against defendants' request is the prejudice plaintiffs and the proposed class will suffer if all discovery is stayed.  Defendants make conclusory arguments that plaintiffs will suffer no prejudice because discovery would be delayed "for only a few months."  Def. Br. at 12.  Defendants are wrong.  Plaintiffs will suffer real harm under a discovery stay that, as explained below, would likely last a year or more.  The passage of time does little but make discovery more difficult and expensive for all, increasing the odds that documents become lost or misplaced, witnesses leave their employment and become difficult to locate, and memories fade. *See Lyell Theatre Corp. v. Loews Corp.*, 682 F.2d 37, 43 (2d Cir. 1982) ("prejudice to [a party] resulting from [an] unreasonable delay may be presumed"); *Lasala v. Needham & Co.*, 399 F. Supp. 2d 421, 427  (S.D.N.Y. 2005) ("if there is even a fair possibility that the stay for which he prays will work damage to someone else, the movant must make out a clear case of hardship or inequity in being required to go forward") (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936) (internal quotation marks omitted)); *SEC v. Jones*, 04 Civ. 4385, 2005 WL 2837462, at *2 (S.D.N.Y. Oct. 28, 2005) ("[s]tays in proceedings may result in prejudice to plaintiffs because witnesses relocate [and] memories fade").

The Modern Settings complaint was filed on November 25, 2014 and the motions to dismiss will not be fully briefed until at least September 28, 2015.[18]  In deference to the Court's busy docket, a decision on Defendants' motion could take several months after briefing is complete, deferring commencement of all discovery until at least the beginning of 2016.[19]  This

---

[18] If plaintiffs exercise their right to amend  under Federal Rule of Civil Procedure 15(a)(1)(B) and this Court's Individual Rule of Practice in Civil Cases 3.D then motion to dismiss briefing will likely be extended several additional months.

[19] This is in contrast to a case relied on by the defendants, Def. Br. at 5, 9 n.8, 12, where the motion to dismiss was scheduled to be heard in nine days, and, therefore, "the stay is for a

delay is exacerbated by the fact that the DOJ and CFTC investigations are underway (in addition to foreign investigations).  *See Seippel*, 2005 WL 388561, at *2 (lifting PSLRA discovery stay because "government investigations and lawsuits are ongoing" and plaintiffs "will be prejudiced if they lack access to documents which have been produced to others").[20]

Plaintiffs are also concerned about the fact that the Platinum and Palladium Fixings have recently undergone a significant reorganization.  As foreign investigations and U.S. lawsuits concerning precious metals price manipulation piled up in the summer of 2014, the LPPFC announced that it was seeking a third-party administrator for its price benchmarks.[21]  The hope was that adding a third-party administrator would make the Platinum and Palladium Fixings less prone to manipulation.  Then, on October 16, 2014, the LPPFC announced that it would no longer bear responsibility for administering the Platinum and Palladium Fixings.[22]  In early December 2014, the Platinum and Palladium Fixings via conference call among the defendants ceased and a new electronic fixing was launched.[23]

---

short period of time."  *See In re Term Commodities Cotton Futures Litig.*, No. 12 Civ. 5126 (ALC), 2013 WL 1907738, at *5 (S.D.N.Y. May 8, 2013).

[20] *See also Pension Trust Fund for Operating Eng'rs v. Assisted Living Concepts, Inc.*, 943 F. Supp. 2d 913, 916 (E.D. Wis. 2013) (lifting PSLRA discovery stay and noting that courts have found "undue prejudice . . . where the defendants have submitted documentation in federal investigations"); *LaBranche*, 333 F. Supp. 2d at 183 (denying discovery stay where plaintiffs would be "prejudiced by their inability to make informed decisions about their litigation strategy in this rapidly shifting landscape").

[21] *See* Jan Harvey and Clara Denina, *London platinum, palladium fixing co seeks third-party administrator*, Reuters (July 31, 2014), *available at* http://uk.reuters.com/article/2014/07/31/uk-platinum-fixing-idUKKBN0G00WG20140731.

[22] LPPFC Press Statement (Oct. 16, 2014), *available at* http://www.sharpspixley.com/uploads/StatementfromLondonPlatinumandPalladiumFixingCompanyLtd161014.pdf.

[23] *See LME announces successful launch of LBMA Platinum and Palladium Prices* (Dec. 4, 2014), *available at* http://www.lme.com/news-and-events/press-releases/press-releases/2014/12/lme-announces-successful-launch-of-lbma-platinum-and-palladium-prices/.

Although defendants assert that appropriate litigation holds are in place, Def. Br. at 2, 13, as a result of the recent transformation of the Platinum and Palladium Fixings, document preservation notices may be insufficient to ensure that all relevant evidence is preserved until at least the beginning of 2016.  *See Assisted Living Concepts*, 943 F. Supp. 2d at 916 (courts have found "undue prejudice is present where the defendants have disclosed documentation in the midst of reorganizing, merging, or being acquired"); *In re Royal Ahold N.V. Sec. & Erisa Litig.*, 220 F.R.D. 246, 251 (D. Md. 2004) ("Faced with a shifting corporate landscape and concerns about evidentiary loss that are by no means wholly speculative, the plaintiffs are not required to rely on the assurances of counsel that relevant evidence will be preserved.").  Further, the limited discovery plaintiffs seek would allow them to serve document preservation subpoenas on third parties, to name new defendants (and prevent the statute of limitations from running as to those defendants), and to interview non-party witnesses.

## II.   Defendants' Concerns Regarding Data Privacy and Confidentiality Are Overblown and Fail to Justify the Imposition of a Stay

Defendants also claim that a stay is warranted because of concerns regarding data privacy and confidentiality and the laws governing them in foreign jurisdictions.  Def. Br. at 2, 11.  The demise of the London Platinum and Palladium Fixings should attenuate defendants' confidentiality concerns.  Since the Platinum and Palladium Fixings no longer exist, there cannot be the same interest in maintaining confidentiality for business purposes.  Further, defendants must also be dealing with the same foreign confidentiality issues in responding to requests from the DOJ and CFTC.

To the extent that defendants have legitimate concerns regarding confidentiality, those concerns can also be alleviated through the entry of an appropriate protective order.  Plaintiffs stand ready to negotiate such an order with defendants.

## <u>CONCLUSION</u>

Simply put, defendants have not demonstrated good cause to prevent limited discovery from commencing in parallel with the ongoing DOJ and CFTC investigations upon the filing of the consolidated amended complaint.

Dated: March 30, 2015

**LABATON SUCHAROW LLP**

By: */s/ Gregory S. Asciolla*

     GREGORY S. ASCIOLLA
     JAY L. HIMES
     MATTHEW J. PEREZ
     140 Broadway
     New York, New York 10005
     Tel: (212) 907-0700
     Fax: (212) 818-0477
     gasciolla@labaton.com
     jhimes@labaton.com
     mperez@labaton.com

**BERGER & MONTAGUE, P.C.**

By:  */s/ Merrill G. Davidoff*

     MERRILL G. DAVIDOFF
     MICHAEL C. DELL'ANGELO
     ZACHARY D. CAPLAN
     1622 Locust Street
     Philadelphia, Pennsylvania 19103
     Tel:  (215) 875-3000
     Fax: (215) 875-4604
     mdavidoff@bm.net
     mdellangelo@bm.net
     zcaplan@bm.net

*Interim Co-Lead Class Counsel*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on March 30, 2015, a copy of the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's ECF system on all counsel of record.

*/s/ Merrill G. Davidoff*
Merrill G. Davidoff