**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ) | |
| ) | |
| ) | Lead Case No. 14-CV-9391 |
| ) | |
| ) | Hon. Gregory H. Woods |
| ) | |
IN RE PLATINUM AND PALLADIUM | ) | |
ANTITRUST LITIGATION | ) | ORAL ARGUMENT REQUESTED |
| ) | |
| ) | |
| ) | |
| ) | |
| ) | |

**DEFENDANT BASF METALS LIMITED'S MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION TO DISMISS PURSUANT TO**
**FED. R. CIV. P. 12(b)(2) AND 12(b)(6)**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

FACTUAL BACKGROUND ............................................................................................... 2

ARGUMENT ....................................................................................................................... 3

    I.      Plaintiffs Fail to Establish Personal Jurisdiction over BASF Metals .................... 3

          A.      Plaintiffs Cannot Establish General Jurisdiction Because BASF
                 Metals Is Not "At Home" in New York ........................................................ 4

          B.      Plaintiffs Do Not Plead Sufficient Facts to Support the Assertion of
                 Specific Jurisdiction Over BASF Metals. ................................................... 7

                1.      BASF Metals' Alleged Actions Were Not Expressly Aimed
                      at New York .................................................................................... 7

                2.      Plaintiffs' Allegations of a Conspiracy Are Insufficient to
                      Establish Specific Jurisdiction Over BASF Metals ...................... 8

    II.      Plaintiffs Fail to Plead A Plausible Claim Against BASF Metals ....................... 10

CONCLUSION .................................................................................................................. 12

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*7 W. 57th St. Realty Co., LLC v. Citigroup, Inc.* ("*Citigroup*"),
  No. 13 CIV. 981 PGG, 2015 WL 1514539 (S.D.N.Y. Mar. 31, 2015)................................ 7, 8, 9

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................................ 9, 10

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................................. 10

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985) ................................................................................................................... 1

*Cancall PCS v. Omnipoint Corp.*,
  No. 99 CIV 3395 AGS, 2000 WL 272309 (S.D.N.Y. Mar. 10, 2000)................................ 10, 12

*Daimler AG v. Bauman*,
  134 S. Ct. 746 (2014) ......................................................................................................... 1, 4, 5

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
  131 S. Ct. 2846 (2011) ..................................................................................................... 3, 4, 5, 7

*Gucci Am., Inc. v. Weixing Li*,
  768 F.3d 122 (2d Cir. 2014).................................................................................................... 4, 5

*In re Aluminum Warehousing Antitrust Litig.* ("*Aluminum*"),
  No. 13-MD-2481 KBF, 2015 WL 892255 (S.D.N.Y. Mar. 3, 2015)................................... 6, 8, 9

*In re M/V MSC FLAMINIA*,
  No. 12-CV-8892 SAS, 2015 WL 1849714 (S.D.N.Y. Apr. 22, 2015) ......................................... 6

*In re Roman Catholic Diocese of Albany, N.Y., Ltd*,
  745 F.3d 30 (2d Cir. 2014)........................................................................................................... 7

*In re Terrorist Attacks on Sept. 11, 2001*,
  714 F.3d 659 (2d Cir. 2013)......................................................................................................... 3

*International Shoe Co. v. Washington*,
  326 U.S. 310 (1945) ................................................................................................................... 4

*Laydon v. Mizuho Bank, Ltd.*,
  No. 12 CIV. 3419 GBD, 2015 WL 1515358 (S.D.N.Y. Mar. 31, 2015) .................................... 8

*Perkins v. Benguet Consolidated Mining Co.*,
   342 U.S. 437 (1952) ................................................................................................ 5

*Refco Group Ltd., LLC v. Cantor Fitzgerald, L.P.*,
   No. 13 CIV. 1654 RA , 2014 WL 2610608 (S.D.N.Y. June 10, 2014) ...................................... 4

*Sonera Holding B.V. v. Cukurova Holding A.S.*,
   750 F.3d 221 (2d Cir. 2014) ................................................................................. 3, 4

*Tarsavage v. Citic Trust Co., Ltd.*,
   3 F. Supp. 3d 137 (S.D.N.Y. 2014) ............................................................................. 7

*Troma Entm't, Inc. v. Centennial Pictures Inc.*,
   729 F.3d 215 (2d Cir. 2013) ................................................................................... 3

*Walden v. Fiore*,
   134 S. Ct. 1115 (2014) ................................................................................. 1, 7, 8

*William O. Gilley Enters., Inc. v. Atl. Richfield Co.*,
   588 F.3d 659 (9th Cir. 2009) .................................................................................. 12

**Rules and Statutes**

Fed. R. Civ. P. 12(b)(2).......................................................................................... 2, 12

Fed. R. Civ. P. 12(b)(6)..................................................................................... 1, 2, 10, 12

**Other Authorities**

CFTC,
   *Bank Participation Reports*,
   http://www.cftc.gov/marketreports/bankparticipationreports/index.htm .................................. 11

iii

## INTRODUCTION

As set forth in Defendants' Joint Motion to Dismiss, the Complaint suffers from a variety of legal flaws that require dismissal of Plaintiffs' claims.[1]  The Complaint should also be dismissed for two reasons that apply uniquely to Defendant BASF Metals Limited ("BASF Metals").

*First*, the Complaint fails to allege facts that would establish personal jurisdiction over BASF Metals.  Last year, the Supreme Court issued two decisions clarifying personal jurisdiction law.  In *Daimler AG v. Bauman*, the Court declared that a foreign corporation is subject to general personal jurisdiction only when its "affiliations with the State in which suit is brought are so constant and pervasive" that it is appropriately considered "at home" there.  134 S. Ct. 746, 751,754 (2014).  Then, in *Walden v. Fiore*, the Court made clear that—for purposes of specific personal jurisdiction— due process only permits a defendant to be haled into court "based on his own affiliation with the [forum], not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the [forum]."  134 S. Ct. 1115, 1123 (2014) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).   "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way."  *Id.*

The Complaint fails to satisfy the standards for either general or specific personal jurisdiction.  BASF Metals has virtually no affiliation with New York, let alone one so "constant and pervasive" that it would be considered "at home" there.  Nor does its alleged conduct meaningfully connect it to this forum.  The Auctions at the center of this case were administered by a London-

---

[1]    Capitalized terms not defined herein have the meaning ascribed to them in Defendants BASF Metals Limited, Goldman Sachs International, HSBC Bank USA, N.A., and ICBC Standard Bank Plc's Joint Memorandum Of Law In Support Of Motion To Dismiss Pursuant To Fed. R. Civ. P. 12(b)(6).

based company, and BASF Metals participated in them through its London-based employees in its London offices.

*Second*, the Complaint fails to state a claim for relief from BASF Metals that is facially plausible.  Plaintiffs' unsubstantiated "net short" theory of the case makes no economic sense as to BASF Metals, which is an industrial consumer of platinum and palladium rather than a financial trading institution.  In light of these deficiencies, the claims against BASF Metals should be dismissed with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).

## FACTUAL BACKGROUND

The Complaint names only one BASF entity—BASF Metals—as a defendant, but also makes references to BASF SE, BASF Catalysts LLC and BASF Corporation.  BASF Metals is a private company headquartered in London, organized under the laws of the United Kingdom, and an indirect but wholly owned subsidiary of BASF SE.  Compl. ¶ 25; Decl. of Dr. Vasileios Vergopoulos ¶ 2 ("Vergopoulos Decl.").  Non-party BASF SE is a public corporation, organized under European law and headquartered in Germany, whose shares do not trade on any New York exchange.  Vergopoulos Decl. ¶ 6.  Non-party BASF Catalysts LLC is an indirect but wholly-owned subsidiary of BASF Corporation which, in turn, is a separate, wholly-owned North American subsidiary of BASF SE with its headquarters in Florham Park, New Jersey.  *Id*. ¶¶ 7-8.

Defendant LPPFC is a private company organized and existing under the laws of the United Kingdom, with its principal place of business in London.  Compl. ¶ 37.  It is owned and controlled by Defendants.  *Id*.

The Complaint makes few jurisdictional allegations, averring only that this Court has personal jurisdiction over BASF Metals because it:  "transacted business throughout the United States, including in this District; had substantial contacts with the United States, including in this District; and/or committed overt acts in furtherance of [its] illegal scheme and conspiracy in the

United States."  Compl. ¶ 22.  The Complaint further alleges that "the conspiracy was directed at, and had the intended effect of, causing injury to persons residing in, located in, or doing business throughout the United States, including in this District, and Plaintiffs' claims arise out of Defendants' conduct."  *Id.*

## ARGUMENT

## I.   Plaintiffs Fail to Establish Personal Jurisdiction over BASF Metals

"A plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit," and to survive a motion to dismiss, that plaintiff must "make a prima facie showing that jurisdiction exists."  *Troma Entm't, Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 217 (2d Cir. 2013) (citation and quotation marks omitted).  That showing "must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant."  *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (citation and quotation marks omitted).  In determining whether a plaintiff has met this burden, the court will not "draw argumentative inferences in the plaintiff's favor, nor must [it] accept as true a legal conclusion couched as a factual allegation."  *Id.* (citations and quotation marks omitted).

Personal jurisdiction can be general or specific.  *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 225 (2d Cir. 2014).  General jurisdiction—which exists when a corporation is essentially "at home" in the forum State—allows a court to adjudicate any and all claims against that corporation.  *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)).  Specific jurisdiction—which is established by the corporation's conduct—allows a court to adjudicate a case where the "affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum state" is sufficient to subject the corporation to the State's regulation.  *Id.* (alternation omitted).

3

## A.   Plaintiffs Cannot Establish General Jurisdiction Because BASF Metals Is Not "At Home" in New York.

The personal jurisdiction inquiry (whether general or specific) asks first, whether the defendant is subject to jurisdiction under the law of the forum state; and second, whether exercise of jurisdiction comports with due process. *Sonera*, 750 F.3d at 224. If a court determines that the exercise of personal jurisdiction is incompatible with due process—as it is here—the court need not consider whether jurisdiction would be proper under state law. *Id*.

Due process prevents a court from exercising jurisdiction over an entity unless that entity has sufficient "minimum contacts" with the forum such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 134 (2d Cir. 2014) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). A foreign corporation—*i.e.*, one that is incorporated and has its principal place of business outside the United States—has sufficient "minimum contacts" with a forum only "when the corporation's affiliations with the State in which suit is brought are so constant and pervasive 'as to render [it] essentially at home in the forum State.'" *Daimler*, 134 S. Ct. at 751 (quoting *Goodyear*, 131 S.Ct. at 2851); *see also Gucci*, 768 F.3d at 135. "Essentially, the foreign entity must be 'comparable to a domestic enterprise in that State'" to be subject to general jurisdiction. *Refco Group Ltd., LLC v. Cantor Fitzgerald, L.P.*, No. 13 CIV. 1654 RA , 2014 WL 2610608, at *8 (S.D.N.Y. June 10, 2014) (quoting *Daimler*, 134 S. Ct. at 758 n.11).

In *Gucci America, Inc. v. Weixing Li*, the Second Circuit applied this standard to Bank of China, which like BASF Metals, is headquartered and incorporated overseas. Although Bank of China operated branch offices in New York, because only a "small portion of [its] worldwide business is conducted in New York," the court held that those activities must be "judged against the

4

corporation's national and global activities," and "plainly do not approach" the required level of contact to assert general jurisdiction. 768 F.3d at 135 (quoting *Daimler*, 134 S. Ct. at 761-62).

Like Bank of China, BASF Metals is not "at home" in New York. It is a United Kingdom company with "its principal place of business in London, England," Compl. ¶ 25. And unlike Bank of China, BASF Metals does not have branch offices in New York, or anywhere in the United States. Vergopoulos Decl. ¶ 2. Absent an allegation that BASF Metals' contacts with New York—compared with its operations elsewhere—are "so substantial and of such a nature as to render the corporation at home" here, *Daimler*, 134 S. Ct. at 761 n.19, BASF Metals is not subject to general personal jurisdiction in this Court.

The Complaint makes no such allegations. The Supreme Court has pointed to *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952), as the "textbook case" for when general jurisdiction was "'appropriately exercised over a foreign corporation that has not consented to suit in the forum.'" *Daimler*, 134 S. Ct. at 755-56 (quoting *Goodyear*, 131 S. Ct. at 2856). In *Perkins*, the defendant mining company—Benguet—was incorporated and headquartered in the Philippines. *Id.* at 756. During World War II, Benguet was forced to close its operations and move its president to Ohio, "where he kept an office, maintained the company's files, and oversaw the company's activities" during the war. *Id.* The Court held that Benguet was subject to general jurisdiction in Ohio because "Ohio was the corporation's principal, if temporary, place of business." *Id.* (citation and quotation marks omitted). Here, Plaintiffs allege nothing like the exceptional circumstances justifying the exercise of general personal jurisdiction over the foreign defendant in *Perkins*.

The closest Plaintiffs come to alleging that BASF Metals is "at home" in New York is a vague allegation that "BASF Metals' parent company [BASF SE] also has a subsidiary, BASF Catalysts [sic] (headquartered in Iselin, New Jersey)," and that "BASF [but not BASF Metals] also

maintains precious metals trading operations in Iselin, New Jersey." Compl. ¶¶ 65 n.15, 25.  The suggestion seems to be that, although BASF Metals is the defendant, a different subsidiary of its parent—and metals trading activities in New Jersey—somehow can subject BASF Metals to the jurisdiction of a New York court.  BASF Catalysts LLC, that other subsidiary of the ultimate parent BASF SE, is a Delaware company with its principal place of business in Florham Park, New Jersey. Vergopoulos Decl. ¶ 7.  But BASF Catalysts LLC does not engage in "precious metals trading operations in Iselin, New Jersey"; that trading is conducted by employees of BASF Corporation, a Delaware corporation that is not a parent of BASF Metals or an LPPFC member.  *Id*. ¶ 8.  Plaintiffs plead no facts and offer no explanation how the existence of a corporate affiliate's trading operation in New Jersey could establish general personal jurisdiction over BASF Metals in New York.  *Cf. In re Aluminum Warehousing Antitrust Litig.* ("*Aluminum*"), No. 13-MD-2481 KBF, 2015 WL 892255, at *10 (S.D.N.Y. Mar. 3, 2015) ("[t]o find that the acts of the subsidiary are attributable to the parent, plaintiffs would need to allege facts which support a disregard of corporate formalities").

Moreover, another court in this District recently concluded that "BASF SE and BASF Corp.'s combined activities in [New York] are insufficient to overcome the due process concerns posed by haling a foreign company into an American court."  *In re M/V MSC FLAMINIA*, No. 12-CV-8892 SAS, 2015 WL 1849714, at *4 (S.D.N.Y. Apr. 22, 2015).  There, Judge Scheindlin refused to impute the domestic activities of BASF Corporation to its indirect parent BASF SE for purposes of establishing personal jurisdiction over BASF SE.  It would make even less sense to impute those same domestic activities to BASF Metals, a different subsidiary of BASF SE, that is neither owned by nor owns BASF Corporation.

Because BASF Metals is "at home" in the United Kingdom, not New York, due process prohibits this Court from exercising general jurisdiction over BASF Metals.

**B.** **Plaintiffs Do Not Plead Sufficient Facts to Support the Assertion of Specific Jurisdiction Over BASF Metals.**

"[S]pecific jurisdiction cases are limited to those involving 'issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *In re Roman Catholic Diocese of Albany, N.Y., Ltd*, 745 F.3d 30, 38 (2d Cir. 2014) (quoting *Goodyear*, 131 S. Ct. at 2851).   In *Walden*, the Supreme Court explained that specific jurisdiction requires that (i) "the defendant's suit-related conduct must create a substantial connection with the forum State," (ii) "the relationship must arise out of contacts that the 'defendant himself' creates with the forum State," and (iii) the contacts must be "with the forum State itself, not the defendant's contacts with persons who reside there," 134 S. Ct. at 1121-22 (citation and emphasis omitted).   Here, where the conduct complained of occurred entirely outside the forum, Plaintiffs must show that BASF Metals' actions were "expressly aimed" at the forum.   *7 W. 57th St. Realty Co., LLC v. Citigroup, Inc.* ("*Citigroup*"), No. 13 CIV. 981 PGG, 2015 WL 1514539, at *9 (S.D.N.Y. Mar. 31, 2015).   It is not sufficient for Plaintiffs to allege that BASF Metals' conduct "incidentally had an effect in the forum, or even that effects in the forum were foreseeable."   *Id.* (citing *Tarsavage v. Citic Trust Co., Ltd.*, 3 F. Supp. 3d 137, 145 (S.D.N.Y. 2014)).   Plaintiffs must allege facts sufficient to establish that BASF Metals "intentionally caused" an effect in New York through its conduct elsewhere.   *Id.*

**1.** **BASF Metals' Alleged Actions Were Not Expressly Aimed at New York**

The Auctions and all of BASF Metals' alleged conduct occurred in London.   BASF Metals has its principal place of business in London, Compl. ¶ 37, and the BASF Metals traders who participated in the Auctions were located in London, Vergopoulos Decl. ¶ 8.   Plaintiffs further allege that LPPFC (the sole function of which is "to take on and continue the promotion, administration and conduct of the London Platinum and Palladium Market Fixing") "served as a shell for the operation of the Fixing, as a vehicle for Defendants' conspiracy, and as an agent for the Fixing

7

Defendants," Compl. ¶ 39, but concede that LPPFC also has its principal place of business in London, *id*.¶ 37.  What Plaintiffs do not allege is that BASF Metals has any operations in the United States, let alone in New York.

Plaintiffs attempt to plead around the foreign nature of the Auctions by alleging that "[t]he NYMEX, where much of the affected trading takes place and whose prices were manipulated, is located in the Southern District of New York," and that "[t]he activities of Defendants and their co-conspirators were within the flow of, were intended to, and did have a substantial effect on the foreign and interstate commerce of the United States."  Compl. ¶¶ 21, 23.  But allegations of supposed effects within the forum are insufficient to establish specific personal jurisdiction over BASF Metals.  "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden*, 134 S. Ct. at 1125.  As other courts in this District have recognized in other recent benchmark cases, such conclusory allegations of indirect price manipulation in secondary markets fail to establish that a foreign defendant "intentionally caused" an effect in New York through its foreign conduct. *See, e.g.*, *Citigroup*, 2015 WL 1514539 at *9, *11 (Gardephe, J.) (LIBOR); *Laydon v. Mizuho Bank, Ltd.*, No. 12 CIV. 3419 GBD, 2015 WL 1515358, at *4-6 (S.D.N.Y. Mar. 31, 2015) (Daniels, J.) (Euroyen-based derivatives); *Aluminum*, 2015 WL 892255, at *8-18 (Forrest, J.) (aluminum derivatives).  Because Plaintiffs plead no facts demonstrating that BASF Metals' alleged manipulation was "expressly aimed" at New York, Plaintiffs cannot establish specific personal jurisdiction over BASF Metals.

### 2. Plaintiffs' Allegations of a Conspiracy Are Insufficient to Establish Specific Jurisdiction Over BASF Metals

To the extent Plaintiffs rely on conspiracy allegations to establish personal jurisdiction over BASF Metals, *see*, *e.g.*, Compl. ¶ 22, Judge Forrest recently held that such allegations do not provide

a standalone basis for establishing personal jurisdiction subject only to the constraints of due process. *Aluminum*, 2015 WL 892255, at *5 ("The rules and doctrines applicable to personal jurisdiction are sufficient without the extension of the law to a separate and certainly nebulous 'conspiracy jurisdiction' doctrine.").

Even were this Court to apply a "conspiracy jurisdiction" doctrine, Plaintiffs fail to plead sufficient facts to establish jurisdiction over BASF Metals. In *Citigroup*, the court examined whether the plaintiffs had alleged facts sufficient to assert specific jurisdiction over foreign defendants based on acts committed by their alleged domestic co-conspirators. 2015 WL 1514539, at *12-13 (Gardephe, J.). The *Citigroup* plaintiffs offered no direct evidence of the alleged conspiracy, instead relying solely on evidence of outside investigations and expert analysis of economic data. The court would not credit those "conclusory statements" that failed to establish how the defendants conspired to cause injury to the plaintiff. *Id.*

Here, Plaintiffs' conclusory allegations of a conspiracy *see, e.g.*, Compl. ¶¶ 210, 216, 217, 218, compel the same result. As in *Citigroup*, the Complaint is devoid of any factual allegations that Defendants engaged in an actual conspiracy; Plaintiffs plead no facts about agreements to manipulate the daily Auctions. Instead, Plaintiffs allege only the same kind of indirect evidence rejected in *Citigroup*: "econometric evidence," *see* Compl. ¶¶ 174-75, and alleged "ongoing government investigations," *see* Compl. ¶¶ 185-208. As Judge Gardephe found, the former fails because "[a]nalysis that 'flags the possibility' of a conspiracy is not sufficient to meet the plausibility test under *Iqbal*." *Citigroup*, 2015 WL 1514539, at *12. The latter is insufficient, especially with respect to BASF Metals, because: (1) the alleged government investigations are into the significantly broader category of "precious metals" rather than specifically into pricing of platinum and palladium (the only two metals for which BASF Metals participates in price-setting Auctions), Vergopoulos

Decl. ¶¶ 4, 5; and (2) none of the alleged ongoing investigations is directed at BASF Metals, *see* Compl. ¶¶ 185-208 (making no mention of BASF Metals).

## II.     Plaintiffs Fail to Plead A Plausible Claim Against BASF Metals

Dismissal pursuant to Rule 12(b)(6) is appropriate when a complaint fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  But an antitrust claim that "would make no economic sense on the facts pleaded by plaintiffs," does not meet this standard.  *Cancall PCS v. Omnipoint Corp.*, No. 99 CIV 3395 AGS, 2000 WL 272309, at *7 n.4 (S.D.N.Y. Mar. 10, 2000).

Plaintiffs' theory, at least as it applies to BASF Metals, is unsubstantiated and, moreover, makes no economic sense.  Plaintiffs allege that BASF Metals was motivated to conspire to *suppress* platinum and palladium prices in furtherance of its alleged "net short" positions.  Compl. ¶¶ 160, 170.  BASF Metals' alleged maintenance of net short positions throughout the Class Period is the linchpin of Plaintiffs' case; without it, there is no claim for a conspiracy in restraint of trade under the Sherman Act, for price manipulation under the CEA, or for unjust enrichment.  Yet, Plaintiffs offer no factual allegations to show that BASF Metals ever held a net short position, let alone that it maintained one for the majority of the Class Period.  Instead, the Complaint merely alleges that "on information and belief, each Bank Defendant had a significant net short platinum and palladium position during all or most of the Class Period."  Compl. ¶ 167.

All Plaintiffs offer in support of this "net short" theory is the supposedly "fair inference" drawn from CFTC reports about the total aggregate positions held by an ever-changing number of anonymous institutions.  Compl. ¶ 167 n.47.  Plaintiffs concede that there is no way "to quantify each Individual Bank Defendant's short positions in the futures and over-the-counter markets" from

10

the CFTC data. Compl. ¶ 167. But that is not the full extent of the flaws in Plaintiffs' theory. In fact, it is impossible to discern from the CFTC data whether BASF Metals, or any other Defendant, was even among the institutions included in the CFTC report in any given month, let alone whether a particular Defendant maintained a net long or short position during that reporting period. Compl. ¶ 167; Serino Decl. Ex. 3 (CFTC, Bank Participation in Futures Markets (May 2013)). Instead, these data merely show that, when aggregated, somewhere between 13 and 19 unnamed "banks overall were net 'short' through the majority of the Class Period," Compl. ¶167; Serino Decl. Ex. 2 (from which Plaintiffs conclude that each Defendant must likewise have been 'short' throughout that period); Compl. ¶ 88. In addition to failing to support a claim against any particular Defendant, this allegation is even more deficient as applied to BASF Metals for the simple reason that, as the Complaint itself acknowledges, BASF Metals is not a bank. Compl. ¶¶ 25, 35, 66 n.15. As a subsidiary of BASF SE, the world's largest chemical company, BASF Metals' primary function is to procure physical metals for manufacturing customers of BASF SE's various companies. Compl. ¶¶ 25, 26 n.15, 162, 173. Allegations supporting Plaintiffs' "net short" theory are thus wholly absent as to BASF Metals. That defect is fatal to Plaintiffs' claims and warrants dismissal of the Complaint against BASF Metals.

Furthermore, Plaintiff's "net short" theory is implausible as to BASF Metals. As the Complaint notes, most commodity traders have no desire to take delivery of the physical metals, preferring to use derivative instruments to maintain purely economic interests in the commodities. Compl. ¶ 77. Even if those traders can maintain a long-term short position in a commodity, BASF Metals cannot. BASF Metals' primary purpose is to procure and source platinum and palladium for manufacturing customers. Compl. ¶¶ 25-26, n.15, 162, 173. As a supplier of physical metal, BASF Metals' ability to maintain a prolonged short position is inherently constrained by its need to

maintain inventories and make deliveries to its customers.  Compl. ¶ 162.  As a holder of physical metal, BASF Metals has a financial interest in seeing the value of that inventory rise, not fall, which is the very definition of a long position.

This crucial distinction between BASF Metals and other market participants renders Plaintiffs "net short" theory economically irrational, as to BASF Metals, and therefore makes any argument that BASF Metals would have conspired with others to suppress the price of platinum and palladium during the Class Period implausible.  *See William O. Gilley Enters., Inc. v. Atl. Richfield Co.*, 588 F.3d 659, 662 (9th Cir. 2009) ("On a motion to dismiss in an antitrust case, a court must determine whether an antitrust claim is 'plausible' in light of basic economic principles"); *Cancall PCS*, 2000 WL 272309, at *7 n.4 (dismissing antitrust claim where "such a claim would make no economic sense on the facts pleaded by plaintiffs").

Finally, Plaintiffs' attempt to capitalize on recent press coverage regarding the FX currency markets has no application to BASF Metals.  Plaintiffs do not allege that BASF Metals participated in any chat room with any other Defendant, settled with, or paid fines to, any regulator, or pled guilty to any criminal charges.  Indeed, there is no allegation that any BASF entity even had an FX trading desk at any point during the Class Period.

## CONCLUSION

For these reasons, the Complaint should be dismissed as to BASF Metals for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) and for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

Dated:  June 22, 2015
       New York, New York

                                        Respectfully submitted,

                                         /s/ Joseph Serino Jr.
                                        Joseph Serino, Jr., P.C.
                                        KIRKLAND & ELLIS LLP
                                        601 Lexington Avenue
                                        New York, NY 10022
                                        Tel: (212) 446-4913
                                        Fax: (212) 446-6460
                                        jserino@kirkland.com

                                        *Attorneys for Defendant*
                                        *BASF Metals Limited*