**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE PLATINUM AND PALLADIUM ANTITRUST LITIGATION

Lead Case No. 14-CV-9391

Hon. Gregory H. Woods

ORAL ARGUMENT REQUESTED

**DEFENDANTS BASF METALS LIMITED AND BASF CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(2) AND 12(b)(6)**

## TABLE OF CONTENTS

**PAGE**

INTRODUCTION ..... 1

FACTUAL BACKGROUND ..... 1

ARGUMENT ..... 4

I. Plaintiffs Fail to Establish Personal Jurisdiction over BASF Metals ..... 4

A. Plaintiffs Cannot Establish General Jurisdiction Because BASF Metals Is Not "At Home" in New York ..... 4

B. Plaintiffs Do Not Plead Sufficient Facts to Support the Assertion of Specific Jurisdiction Over BASF Metals. ..... 8

1. BASF Metals' Alleged Actions Were Not Expressly Aimed at New York ..... 8

2. Plaintiffs' Allegations of a Conspiracy Are Insufficient to Establish Specific Jurisdiction Over BASF Metals ..... 10

II. Plaintiffs Fail to Plead A Valid Claim Against BASF Corp. ..... 11

CONCLUSION ..... 12

## TABLE OF AUTHORITIES

**PAGE(S)**

**Cases**

*7 W. 57th St. Realty Co., LLC v. Citigroup, Inc.* (“*Citigroup*”),
No. 13 CIV. 981 PGG, 2015 WL 1514539 (S.D.N.Y. Mar. 31, 2015)........................ 8, 9, 10, 11

Ashcroft v. Iqbal,
556 U.S. 662 (2009) ........................................................................................................ 11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................................................................................ 11

*Capmark Fin. Grp. Inc. v. Goldman Sachs Credit Partners L.P.*,
491 B.R. 335 (S.D.N.Y. 2013) ...................................................................................... 6, 7

*Colliton v. Cravath, Swaine & Moore LLP*,
No. 08-0400, 2008 WL 4386764 (S.D.N.Y. Sept. 24, 2008) ............................................ 1

*Daimler AG v. Bauman*,
134 S.Ct. 746 (2014) ..................................................................................................... 5, 6

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
131 S. Ct. 2846 (2011) .............................................................................................. 4, 5, 6, 8

*Gucci Am., Inc. v. Weixing Li*,
768 F.3d 122 (2d Cir. 2014) .............................................................................................. 5

*In re Aluminum Warehousing Antitrust Litig.*,
No. 13-MD-2481 KBF, 2015 WL 892255 (S.D.N.Y. Mar. 3, 2015) ............................... 10

*In re M/V MSC FLAMINIA*,
No. 12-CV-8892 SAS, 2015 WL 1849714 (S.D.N.Y. Apr. 22, 2015) .............................. 7

*In re Roman Catholic Diocese of Albany, N.Y., Ltd*,
745 F.3d 30 (2d Cir. 2014) ................................................................................................ 8

*In re Terrorist Attacks on Sept. 11, 2001*,
714 F.3d 659 (2d Cir. 2013) .............................................................................................. 4

*Int’l Shoe Co. v. Washington*,
326 U.S. 310 (1945) .......................................................................................................... 5

*Laydon v. Mizuho Bank, Ltd.*,
No. 12 CIV. 3419 GBD, 2015 WL 1515358 (S.D.N.Y. Mar. 31, 2015) ............................ 9

*Laydon v. Mizuho Bank, Ltd.*,
No. 12-cv-3419, 2014 WL 1280464 (S.D.N.Y. Mar. 28, 2014) .............................................. 11

*Mason v. Am. Tobacco Co.*,
346 F.3d 36 (2d Cir. 2003) .............................................................................................. 11

*Perkins v. Benguet Consolidated Mining Co.*,
342 U.S. 437 (1952) ........................................................................................................ 6

*Refco Group Ltd., LLC v. Cantor Fitzgerald, L.P.*,
No. 13 CIV. 1654 RA, 2014 WL 2610608 (S.D.N.Y. June 10, 2014) ....................................... 5

*Sonera Holding B.V. v. Cukurova Holding A.S.*,
750 F.3d 221 (2d Cir. 2014) .......................................................................................... 4, 5

*Tarsavage v. Citic Trust Co., Ltd.*,
3 F. Supp. 3d 137 (S.D.N.Y. 2014) ................................................................................... 8

*Troma Entm't, Inc. v. Centennial Pictures Inc.*,
729 F.3d 215 (2d Cir. 2013) ............................................................................................ 4

*Walden v. Fiore*,
134 S.Ct. 1115 (2014) ................................................................................................. 8, 9

**Statutes**

Fed. R. Civ. P. 12(b)(2) ................................................................................................. 12

Fed. R. Civ. P. 12(b)(6) .............................................................................................. 1, 12

## INTRODUCTION

As set forth in Defendants' Joint Motion to Dismiss, the Complaint suffers from a variety of legal flaws that require dismissal of Plaintiffs' claims.[1] The Complaint should also be dismissed for reasons that apply uniquely to Defendants BASF Metals Limited ("BASF Metals" and BASF Corporation ("BASF Corp.").

## FACTUAL BACKGROUND

Defendants BASF Metals and BASF Corp. are indirect subsidiaries of BASF SE, a public corporation organized under European law and headquartered in Germany. Declaration of Vasileios Vergopoulos [ECF No. 83] ("Vergopoulos Decl.") ¶ 2; Declaration of Mary Erin Brennan ("Brennan Decl.") ¶ 2. BASF SE is an entirely foreign corporation: its shares do not trade on any New York exchange, it has never been incorporated in New York, and it has never been authorized to transact business in New York as a foreign corporation. Vergopoulos Decl. ¶ 6.

Plaintiffs' Initial Complaint named a single BASF SE subsidiary—BASF Metals—as a defendant, presumably because all of Plaintiffs' relevant factual allegations are directed toward BASF Metals' activities in London.[2] As Plaintiffs agree, "BASF Metals was formerly known as Engelhard Metals Limited, when the latter was acquired by BASF SE in May 2006." Initial Compl. ¶ 25.[3] "After the Engelhard Corporation acquisition, BASF Metals assumed Engelhard Corporation's role as a participating member in the Fixing. During the Class Period, BASF Metals was a participating member in the Fixing and was a market-making member of LPPM." Compl.

---

[1] Capitalized terms not defined herein have the meaning ascribed to them in Defendants BASF Metals Limited, BASF Corporation, Goldman Sachs International, HSBC Bank USA, N.A., ICBC Standard Bank Plc and The London Platinum and Palladium Fixing Company Ltd.'s Joint Memorandum Of Law In Support Of Motion To Dismiss Pursuant To Fed. R. Civ. P. 12(b)(6) ("Joint Motion to Dismiss").

[2] First Consolidated Amended Class Action Complaint [ECF No. 45].

[3] As noted in Defendants' Joint Motion to Dismiss, Plaintiffs remain bound by factual admissions in their Initial Complaint. *See Colliton v. Cravath, Swaine & Moore LLP*, No. 08-0400, 2008 WL 4386764, at *6 (S.D.N.Y. Sept. 24, 2008).

¶ 31; *see also id.* ¶ 62. BASF Metals (but not BASF Corp.) is defined by Plaintiffs as one of the "Fixing Defendants," *id.* ¶ 1, BASF Metals (but not BASF Corp.) is one of the four Defendants that owns and controls Defendant LPPFC, *id.* ¶ 45, and BASF Metals (but not BASF Corp.) employs one of the directors of Defendant LPPFC, *id.* ¶ 46.

As explained in BASF Metals' original motion to dismiss,[4] however, BASF Metals is not subject to either general or specific personal jurisdiction before this Court. BASF Metals has virtually no affiliation with New York, let alone one so "constant and pervasive" that it would be considered "at home" here. Nor would BASF Metals' alleged conduct meaningfully connect it to this forum. The Auctions at issue in this case were administered by a London-based company, and BASF Metals—a private company headquartered in London and organized under the laws of the United Kingdom—participated in them through its London-based employees located in its London office. Compl. ¶ 45; Vergopoulos Decl. ¶¶ 2, 4.

Now, in tacit recognition of this Court's lack of personal jurisdiction over BASF Metals, Plaintiffs have attempted to cure the Initial Complaint's fatal jurisdictional deficiencies by naming a second BASF SE subsidiary—BASF Corp., an indirect but wholly-owned Delaware corporation headquartered in Florham Park, New Jersey, Brennan Decl. ¶ 2—as a defendant in its new Complaint.[5] Yet despite adding BASF Corp. as a defendant, Plaintiffs' factual allegations remain targeted solely at BASF Metals. The only apparent justification for adding BASF Corp. to the Complaint is Plaintiffs' assertion that "BASF Metals is organizationally part of and subordinate to BASF Corp." Compl. ¶ 31. This allegation, which is both incorrect and which in no way establishes

---

4 Defendant BASF Metals Limited's Mem. Of Law In Supp. Of Mot. To Dismiss Pursuant To Fed. R. Civ. P. 12(b)(2) And 12(b)(6) [ECF No. 82].

5 Second Consolidated Am. Class Action Compl. [ECF No. 102].

that BASF Corp. is legally responsible for BASF Metals' actions, seems to be premised on Plaintiffs' misunderstanding of the organization and structure of BASF's Catalysts Division.

The BASF Catalysts Division is not a legal entity; it is instead an organizational and marketing term that describes all of BASF SE's and its subsidiaries' (collectively "BASF's") global business operations that relate to the development, manufacturing, and sale of catalysts. Brennan Decl. ¶ 4.[6] The BASF Catalysts Division includes operations of many separate and legally distinct BASF companies located across five continents. *Id.* Plaintiffs make no allegations that the corporate formalities separating any of the various BASF entities have been disregarded or disrespected in any manner. It remains undisputed that: (1) BASF Metals "is a company organized and existing under the laws of the United Kingdom with its principal place of business in London, England," Compl. ¶ 31; Vergopoulos Decl. ¶ 2; (2) BASF Corp. is a Delaware corporation with its principal place of business in Florham Park, New Jersey, Brennan Decl. ¶ 2; and (3) BASF Metals and BASF Corp. are "sibling" subsidiaries of BASF SE, neither of which is a direct nor an indirect parent of the other, Vergopoulos Decl. ¶ 2; Brennan Decl. ¶¶ 2, 3.

In short, Plaintiffs cannot cure the jurisdictional deficiencies in their Initial Complaint by naming BASF Corp. as a defendant. BASF Metals remains a foreign corporation without the minimum contacts with New York that are necessary to establish personal jurisdiction in this proceeding. In addition, because Plaintiffs have not alleged any facts about BASF Corp. that connect it in any way to the Sherman Act, Commodity Exchange Act, or unjust enrichment claims alleged in the Complaint, Plaintiffs have failed to state a claim against BASF Corp. on which relief can be granted. For these reasons, the claims against BASF Metals and BASF Corp. should be dismissed.

---

[6] *See generally* http://www.catalysts.basf.com/.

## ARGUMENT

### I. Plaintiffs Fail to Establish Personal Jurisdiction over BASF Metals

"A plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit," and to survive a motion to dismiss, that plaintiff must "make a prima facie showing that jurisdiction exists." *Troma Entm't, Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 217 (2d Cir. 2013) (citation omitted). That showing "must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (citation omitted). In determining whether a plaintiff has met this burden, the court will not "draw argumentative inferences in the plaintiff's favor, nor must [it] accept as true a legal conclusion couched as a factual allegation." *Id*. (citations omitted).

Personal jurisdiction can be general or specific. *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 225 (2d Cir. 2014). General jurisdiction—which exists when a corporation is essentially "at home" in the forum State—allows a court to adjudicate any and all claims against that corporation. *Id*. (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)). Specific jurisdiction—which is established by the corporation's conduct—allows a court to adjudicate a case where the "affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum state" is sufficient to subject the corporation to the State's regulation. *Id*. (alteration omitted).

#### A. Plaintiffs Cannot Establish General Jurisdiction Because BASF Metals Is Not "At Home" in New York.

The personal jurisdiction inquiry (whether general or specific) asks first, whether the defendant is subject to jurisdiction under the law of the forum state; and second, whether exercise of jurisdiction comports with due process. *Sonera*, 750 F.3d at 224. If a court determines that the

exercise of personal jurisdiction is incompatible with due process—as it is here—the court need not consider whether jurisdiction would be proper under state law. *Id*.

Due process prevents a court from exercising jurisdiction over an entity unless that entity has sufficient "minimum contacts" with the forum such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 134 (2d Cir. 2014) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). A foreign corporation—*i.e.*, one that is incorporated and has its principal place of business outside the United States—has sufficient "minimum contacts" with a forum only "when the corporation's affiliations with the State in which suit is brought are so constant and pervasive 'as to render [it] essentially at home in the forum State.'" *Daimler AG v. Bauman*, 134 S.Ct. 746 (2014) (quoting *Goodyear*, 131 S.Ct. at 2851); *see also Gucci*, 768 F.3d at 135. "Essentially, the foreign entity must be 'comparable to a domestic enterprise in that State'" to be subject to general jurisdiction. *Refco Group Ltd., LLC v. Cantor Fitzgerald, L.P.*, No. 13 CIV. 1654 RA, 2014 WL 2610608, at *8 (S.D.N.Y. June 10, 2014)).

In *Gucci America, Inc. v. Weixing Li*, the Second Circuit applied this standard to Bank of China, which like BASF Metals, is headquartered and incorporated overseas. Although Bank of China operated branch offices in New York, because only a "small portion of [its] worldwide business is conducted in New York," the court held that those activities must be "judged against the corporation's national and global activities," and "plainly do not approach" the required level of contact to assert general jurisdiction. 768 F.3d at 135 (quoting *Daimler*, 134 S. Ct. at 761-62).

Like Bank of China, BASF Metals is not "at home" in New York. It "is a company organized and existing under the laws of the United Kingdom with its principal place of business in London, England." Compl. ¶ 31. And unlike Bank of China, BASF Metals does not have branch

offices in New York, or anywhere in the United States. Vergopoulos Decl. ¶ 2. Absent an allegation that BASF Metals' contacts with New York—compared with its operations elsewhere—are "so substantial and of such a nature as to render the corporation at home" here, *Daimler*, 134 S. Ct. at 761 n.19, BASF Metals is not subject to general personal jurisdiction in this Court.

The Complaint makes no such allegations. The Supreme Court has pointed to *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952), as the "textbook case" for when general jurisdiction was "'appropriately exercised over a foreign corporation that has not consented to suit in the forum.'" *Daimler*, 134 S. Ct. at 755-56 (quoting *Goodyear*, 131 S. Ct. at 2856). In *Perkins*, the defendant mining company—Benguet—was incorporated and headquartered in the Philippines. *Id.* at 756. During World War II, Benguet was forced to close its operations and move its president to Ohio, "where he kept an office, maintained the company's files, and oversaw the company's activities" during the war. *Id*. The Court held that Benguet was subject to general jurisdiction in Ohio because "Ohio was the corporation's principal, if temporary, place of business." *Id*. (citation omitted). Here, Plaintiffs allege nothing like the exceptional circumstances justifying the exercise of general personal jurisdiction over the foreign defendant in *Perkins*.

The closest Plaintiffs come to alleging that BASF Metals is "at home" in New York is a vague allegation that "BASF Metals is organizationally part of and subordinate to BASF Corp.," a separate Delaware-registered BASF company that is neither a direct nor indirect parent or subsidiary of BASF Metals. Compl. ¶¶ 30-31; Brennan Decl. ¶ 3. Although the precise implication of Plaintiffs' assertion is unclear, what is certain is that BASF Metals and BASF Corp. are separate corporate entities neither of which is legally accountable for the actions of the other. *See Capmark Fin. Grp. Inc. v. Goldman Sachs Credit Partners L.P.*, 491 B.R. 335, 346 (S.D.N.Y. 2013) ("Well-established precedent holds that in order for one company to be held responsible for the actions of a

related company, it is necessary that there be sufficient facts to pierce the corporate veil."). Piercing the corporate veil requires facts establishing that a controlling entity ignored the separate legal status of, and dominated the affairs of, a controlled entity. *Id*. In addition, when a plaintiff seeks to disregard the corporate formalities separating horizontal affiliates—such as BASF Metals and BASF Corp.—the veils separating each entity from the shared corporate parent (BASF SE) must be pierced. *Id*. at 349.

Here, Plaintiffs have made no such allegations. In fact, Plaintiffs have not even suggested that the corporate formalities between BASF Metals and BASF Corp can or should be disregarded. Nor do Plaintiffs explain why the addition of BASF Corp.—a legally separate and distinct BASF corporate entity—as a defendant would establish personal jurisdiction over BASF Metals, a foreign company with no "minimum contacts" with New York that would render it "at home" within the state.

In any event, even if Plaintiffs had tried to argue that BASF Corp.'s domestic actions could somehow establish personal jurisdiction over BASF SE's foreign subsidiaries, like BASF Metals, another court in this District recently concluded that "BASF SE and BASF Corp.'s combined activities in [New York] are insufficient to overcome the due process concerns posed by haling a foreign company into an American court." *In re M/V MSC FLAMINIA*, No. 12-CV-8892 SAS, 2015 WL 1849714, at *4 (S.D.N.Y. Apr. 22, 2015). There, Judge Scheindlin refused to impute the domestic activities of BASF Corp. to its indirect parent BASF SE for purposes of establishing personal jurisdiction over BASF SE. It would make even less sense to impute those same domestic activities to BASF Metals, a different subsidiary of BASF SE, that is neither owned by nor owns BASF Corp.

Because BASF Metals is "at home" in the United Kingdom, not New York, due process prohibits this Court from exercising general jurisdiction over BASF Metals.

**B. Plaintiffs Do Not Plead Sufficient Facts to Support the Assertion of Specific Jurisdiction Over BASF Metals.**

"[S]pecific jurisdiction cases are limited to those involving 'issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *In re Roman Catholic Diocese of Albany, N.Y., Ltd*, 745 F.3d 30, 38 (2d Cir. 2014) (quoting *Goodyear*, 131 S. Ct. at 2851). In *Walden v. Fiore*, 134 S.Ct. 1115 (2014), the Supreme Court explained that specific jurisdiction requires that (i) "the defendant's suit-related conduct must create a substantial connection with the forum State," (ii) "the relationship must arise out of contacts that the 'defendant himself' creates with the forum State," and (iii) the contacts must be "with the forum State itself, not the defendant's contacts with persons who reside there," 134 S. Ct. at 1121-22 (citation and emphasis omitted). Here, where the conduct complained of occurred entirely outside the forum, Plaintiffs must show that BASF Metals' actions were "expressly aimed" at the forum. *7 W. 57th St. Realty Co., LLC v. Citigroup, Inc.* ("*Citigroup*"), No. 13 CIV. 981 PGG, 2015 WL 1514539, at *9 (S.D.N.Y. Mar. 31, 2015). It is not sufficient for Plaintiffs to allege that BASF Metals' conduct "incidentally had an effect in the forum, or even that effects in the forum were foreseeable." *Id.* (citing *Tarsavage v. Citic Trust Co., Ltd.*, 3 F. Supp. 3d 137, 145 (S.D.N.Y. 2014)). Plaintiffs must allege facts sufficient to establish that BASF Metals "intentionally caused" an effect in New York through its conduct elsewhere. *Id*.

**1. BASF Metals' Alleged Actions Were Not Expressly Aimed at New York**

The Auctions and all of BASF Metals' alleged conduct occurred in London. BASF Metals has its principal place of business in London, Compl. ¶ 37, and the BASF Metals traders who participated in the Auctions were located in London, Vergopoulos Decl. ¶ 4, *see* Compl ¶ 31

("Defendant BASF Metals Limited ('BASF Metals') is a company organized and existing under the laws of the United Kingdom with its principal place of business in London, England…. During the Class Period, BASF Metals was a participating member in the Fixing and was a market-making member of LPPM."). Plaintiffs further allege that LPPFC (the sole function of which is "to take on and continue the promotion, administration and conduct of the London Platinum and Palladium Market Fixing") "served as a shell for the operation of the Fixing, as a vehicle for Defendants' conspiracy, and as an agent for the Fixing Defendants," Compl. ¶ 39, but concede that LPPFC also has its principal place of business in London, *id*. ¶ 37. What Plaintiffs do not allege is that BASF Metals has any operations in the United States, let alone in New York.

Plaintiffs attempt to plead around the foreign nature of the Auctions by alleging that "[t]he NYMEX, where much of the affected trading takes place and whose prices were manipulated, is located in the Southern District of New York," and that "[t]he activities of Defendants and their co-conspirators were within the flow of, were intended to, and did have a substantial effect on the foreign and interstate commerce of the United States." Compl. ¶¶ 21, 23. But allegations of supposed effects within the forum are insufficient to establish specific personal jurisdiction over BASF Metals. "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden*, 134 S. Ct. at 1125. As other courts in this District have recognized in other recent benchmark cases, such conclusory allegations of indirect price manipulation in secondary markets fail to establish that a foreign defendant "intentionally caused" an effect in New York through its foreign conduct. *See, e.g.*, *Citigroup*, 2015 WL 1514539 at *9, *11 (Gardephe, J.) (LIBOR); *Laydon v. Mizuho Bank, Ltd.*, No. 12 CIV. 3419 GBD, 2015 WL 1515358, at *4-6 (S.D.N.Y. Mar. 31, 2015) (Daniels, J.) (Euroyen-based derivatives); *In re Aluminum Warehousing Antitrust Litig.*, No. 13-MD-

2481 KBF, 2015 WL 892255 (S.D.N.Y. Mar. 3, 2015) (Forrest, J.) (aluminum derivatives). Because Plaintiffs plead no facts demonstrating that BASF Metals' alleged manipulation was "expressly aimed" at New York, Plaintiffs cannot establish specific personal jurisdiction over BASF Metals.

### 2. Plaintiffs' Allegations of a Conspiracy Are Insufficient to Establish Specific Jurisdiction Over BASF Metals

To the extent Plaintiffs rely on conspiracy allegations to establish personal jurisdiction over BASF Metals, *see, e.g.*, Compl. ¶ 22, Judge Forrest recently held that such allegations do not provide a standalone basis for establishing personal jurisdiction subject only to the constraints of due process. *Aluminum*, 2015 WL 892255, at *5 ("The rules and doctrines applicable to personal jurisdiction are sufficient without the extension of the law to a separate and certainly nebulous 'conspiracy jurisdiction' doctrine.").

Even were this Court to apply a "conspiracy jurisdiction" doctrine, Plaintiffs fail to plead sufficient facts to establish jurisdiction over BASF Metals. In *Citigroup*, Judge Gardephe examined whether the plaintiffs had alleged facts sufficient to assert specific jurisdiction over foreign defendants based on acts committed by their alleged domestic co-conspirators. 2015 WL 1514539, at *12-13. The *Citigroup* plaintiffs offered no direct evidence of the alleged conspiracy, instead relying solely on evidence of outside investigations and expert analysis of economic data. The court would not credit those "conclusory statements" that failed to establish how the defendants conspired to cause injury to the plaintiff. *Id.*

Here, Plaintiffs' conclusory allegations of a conspiracy, *see, e.g.*, Compl. ¶¶ 210, 216, 217, 218, compel the same result. As in *Citigroup*, the Complaint is devoid of any factual allegations that Defendants engaged in an actual conspiracy; Plaintiffs plead no facts about agreements to manipulate the daily Auctions. Instead, Plaintiffs allege only the same kind of indirect evidence rejected in *Citigroup*: "econometric evidence," *see* Compl. ¶¶ 174-75, and alleged "ongoing

government investigations," *see* Compl. ¶¶ 185-208. As Judge Gardephe found, the former fails because "[a]nalysis that 'flags the possibility' of a conspiracy is not sufficient to meet the plausibility test under *Iqbal*." *Citigroup*, 2015 WL 1514539, at *12. The latter is insufficient, especially with respect to BASF Metals, because: (1) the alleged government investigations are into the significantly broader category of "precious metals" rather than specifically into pricing of platinum and palladium (the only two metals for which BASF Metals participates in price-setting Auctions), Vergopoulos Decl. ¶ 5; and (2) none of the alleged ongoing investigations is directed at BASF Metals, *see* Compl. ¶¶ 185-208 (making no mention of BASF Metals).

## II. Plaintiffs Fail to Plead A Valid Claim Against BASF Corp.

To survive a motion to dismiss, a complaint must set forth "sufficient factual matter" to state a facially plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. In evaluating whether a pleading has met this burden, a court ignores "legal conclusions, deductions or opinions couched as factual allegations." *Mason v. Am. Tobacco Co.*, 346 F.3d 36, 39 (2d Cir. 2003) (alteration omitted), as well as "'naked assertion[s]' devoid of 'further factual enhancement,'" *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)), and allegations couched in "vague" or "general" terms, *Laydon v. Mizuho Bank, Ltd.*, No. 12-cv-3419, 2014 WL 1280464, at *3 (S.D.N.Y. Mar. 28, 2014) (citation omitted).

Far from alleging facts sufficient to allow the Court to draw the reasonable inference that BASF Corp. is liable for the Sherman Act, Commodity Exchange Act, or unjust enrichment claims alleged in the Complaint, Plaintiffs assert no factual allegations about BASF Corp. related to the claims. BASF Corp. is only explicitly mentioned in three paragraphs of the Complaint, *see* Compl. ¶¶ 30-32 (identifying the Defendants), and even though the Complaint defines "BASF Metals and

BASF Corp." collectively as "BASF," *id.* ¶ 32, that term is hardly used and even then not in any meaningful way. *See id.* ¶¶ 12, 46, 66, 182, 193 n.64, 196 n.65, 187. Indeed, BASF Corp. is not alleged to have: (i) participated in the daily fixing Auctions for platinum and palladium, (ii) managed or served as a member of the LPPFC, (iii) engaged in any conspiracies to fix the prices of those metals, (iv) manipulated the platinum or palladium markets, (v) maintained a net short position during the Class Period (and thus had no incentive to suppress prices on its own or in concert with others), or (vi) improperly enriched itself at Plaintiffs' expense. Plaintiffs have thus failed to plausibly state any claims against BASF Corp. for which relief could be granted.

## CONCLUSION

For these reasons, the Complaint should be dismissed as to BASF Metals for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). The Complaint should also be dismissed as to BASF Corp. for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

Dated: September 21, 2015
New York, New York

Respectfully submitted,

*/s/ Joseph Serino Jr.*

Joseph Serino, Jr., P.C.
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Tel: (212) 446-4913
Fax: (212) 446-6460
jserino@kirkland.com

*Attorney for Defendant*
*BASF Metals Limited and*
*BASF Corporation*