

April 4, 2016

**VIA ECF**

Honorable Gregory H. Woods
U.S. District Court for the
 Southern District of New York
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007

     Re:    *In re Platinum and Palladium Antitrust Litigation*, No. 14-cv-9391 (S.D.N.Y.)

Dear Judge Woods,

     We write on behalf of Plaintiffs in response to Defendants' March 31, 2016 letter ("DL"), which misstates the holding and analysis of Judge Furman's recent decision in *Alaska Electrical Pension Fund v. Bank of America Corporation*, 14-cv-7126, 2016 WL 1241533 (S.D.N.Y. Mar. 28, 2016) ("*ISDAfix*").

     **Antitrust Standing.**  Judge Furman's holding on antitrust standing is applicable here. As Plaintiffs demonstrated in opposing dismissal, Plaintiffs are direct victims of Defendants' conspiracy because they sold Platinum and Palladium Investments at prices that were artificially suppressed by Defendants' conduct and thus have antitrust standing.  *See* Plaintiffs' Opp. to Joint MTD, ECF 129, at 21-31 ("P. Opp.").  Consistent with the rulings of other courts, Judge Furman's ruling supports Plaintiffs' position because "collusion in the setting of a benchmark rate (or its functional equivalent) that is then used as a component of price results in antitrust injury."  *ISDAfix*, 2016 WL 1241533, at *7.  *See also id.* ("[C]ourts have long held that such collusion gives rise to a claim under the Sherman Act by purchasers of the affected products."); *id.* at *1.  Thus, contrary to Defendants' assertions, DL at 1, injury stemming from a scheme that impacts market-wide pricing—such as the one pleaded here—does not implicate "umbrella liability."  Further, Judge Furman's efficient enforcer analysis did ***not*** differentiate plaintiffs who transacted directly with a defendant from those who transacted in instruments affected by defendants' manipulation of a benchmark:  "Plaintiffs have alleged that they were directly harmed by Defendants' anticompetitive conduct *by having to pay higher prices (or earning lower profits) from instruments tied to ISDAfix*[.]"  *Id.* at *8 (emphasis added).

Honorable Gregory H. Woods
April 4, 2016
Page 2

**Injury-in-Fact.**  Defendants also misstate Judge Furman's holding on the "low threshold" of injury-in-fact.  *Id.* at *4.  Although the *ISDAfix* plaintiffs alleged transactions where ISDAfix was an express term of the transaction, the *ISDAfix* plaintiffs also alleged *transactions where that was not so*.[1]  As to the latter transactions, Judge Furman rejected the *ISDAfix* defendants' arguments that the complaint should be dismissed for failing to specify the time of day that a transaction occurred versus the time of day by which the impact of manipulation may have abated.  Defendants here make the same arguments.  Moreover, contrary to Defendants' assertions, DL at 1 n.1, Plaintiffs have provided data similar to that provided by the *ISDAfix* plaintiffs including identifying dozens of days on which Plaintiffs' transactions coincided with Defendants' manipulation.  *See* SAC Appendices C & D, ECF 102 (July 27, 2015).[2]

**Plausibility.**  Finally, Defendants point out the rather unremarkable fact that this case is not exactly the same as *ISDAfix*.  However, Defendants ignore Judge Furman's adoption of many plausibility factors relevant here.  First, Judge Furman rejected attempts to provide alternative non-conspiratorial explanations for pricing anomalies uncovered by plaintiffs' consultants.  *ISDAfix*, 2016 WL 1241533, at *5.  Second, Judge Furman found that allegations regarding the "mere existence" of government investigations bolstered plaintiffs' allegations.  *Id.*[3]  Third, on motive and feasibility, Judge Furman recognized as a plus factor the banks' status as "major players" who were "jointly motivated by a desire to maximize profits," in a way that could not be done alone.  *Id.*  Lastly, Judge Furman found the benchmark-rigging conspiracy to be "economically sensible and feasible" even if the banks' portfolios were not "perfectly aligned," and noted that banks have already admitted to rigging other financial benchmarks.  *Id.*

---

[1] *See, e.g.*, *ISDAfix*, ECF 204 (Defendants' MTD Reply) at 20-21 (arguing that "[f]or their transactions not linked to ISDAfix" injury-in-fact was not well-pled because plaintiffs were "conspicuously silent as to whether Plaintiffs transacted before, during, or after" the alleged "shock" of the manipulation).  Further, there is little doubt that some members of the proposed class here have transactions that are expressly linked to the Fixing.

[2] *See also ISDAfix*, 2016 WL 1241533, at *4 ("At this stage, the appropriate question is whether the alleged manipulation of ISDAfix plausibly caused each Plaintiff to suffer *some* loss under the terms of *some* derivative at *some* point during the years the conspiracy allegedly took place. . . . Given the sheer volume of transactions identified by Plaintiffs in the Amended Complaint, it is not hard to conclude that the answer to that question is yes."); P. Opp., at 23 (discussing *FX*).

[3] In this case government investigations have already revealed, *inter alia*, that (1) Defendants engaged in practices such as "banging the close" and "painting the screen" both in the precious metals markets and in the related foreign exchange market, *see* SAC at 18-19; (2) Defendant UBS engaged in improper activity related to precious metals fixings and received immunity from prosecution relating to its conduct in exchange for cooperation with various government regulators.  *See, e.g.*, P. Opp., at 18-19.  Further, although the DOJ Antitrust Division is reported to have closed its precious metals investigation, precious metals and precious metals fixing investigations by the DOJ Criminal Fraud Division, CFTC, European Commission, the Swiss competition authority, and other regulators remain ongoing.

Honorable Gregory H. Woods<br>
April 4, 2016<br>
Page 3

Respectfully submitted,

| BERGER & MONTAGUE, P.C. | LABATON SUCHAROW LLP |
|---|---|
| */s/ Merrill G. Davidoff* | */s/ Jay L. Himes* |
| Merrill G. Davidoff | Jay L. Himes |
| 1622 Locust Street | 140 Broadway |
| Philadelphia, PA 19103 | New York, NY 10005 |
| (215) 875-3000 (phone) | (212) 907-0834 (phone) |
| (215) 875-4604 (fax) | (212) 883-7501 (fax) |
| mdavidoff@bm.com | jhimes@labaton.com |

cc: All counsel of record (via ECF)