May 23, 2023

**VIA ECF**

Hon. Gregory H. Woods
United States District Court, S.D.N.Y.
500 Pearl Street
New York, New York 10007

      RE:    *In re Platinum & Palladium Antitrust Litigation*, No. 1:14-cv-09391 (S.D.N.Y.)

Dear Judge Woods:

In response to the Court's April 29, 2023 Order, Plaintiffs and Defendants jointly submit this letter advising the Court on the status of the case. ECF No. 260. Below, the parties address each of the topics identified in the April 29 Order.

**I.**    **A brief statement of the nature of the case, the principal claims and defenses, and the major legal and factual issues that are most important to resolving the case, whether by trial, settlement or dispositive motion.**

*Plaintiffs' statement.* In their Third Amended Complaint ("TAC"), Plaintiffs allege that Defendants BASF Metals Limited ("BASF Metals"), Goldman Sachs International ("Goldman Sachs"), HSBC Bank USA, N.A. ("HSBC"), and ICBC Standard Bank plc ("ICBC") collectively fixed the prices of platinum and palladium through the twice-daily "Fixing" calls, which were administered by the London Platinum and Palladium Fixing Company ("LPPFC"), that Defendants established "to operate as the vehicle for the Fixing." TAC ¶¶ 3. Plaintiffs allege that before, during, and after the Fixing calls, Defendants' precious metals traders transacted in and manipulated physical platinum and palladium and platinum and palladium futures and options traded on the New York Mercantile Exchange ("NYMEX"). *E.g.*, TAC ¶¶ 10-14, 64, 96, 207.

Plaintiffs are investors in NYMEX-traded platinum and palladium derivatives. TAC ¶¶ 28-32.[1] They allege claims under the Sherman Act, 15 U.S.C. § 1, and the Commodity Exchange Act ("CEA"), 7 U.S.C. §§ 1, *et seq.*, for manipulation and manipulative device, as well as aiding and abetting violations of the CEA and principal-agent liability (TAC ¶¶ 273-95), arising from Defendants' collusion during the period 2008 through November 2014, when the Fixing calls that Defendants controlled ended. Plaintiffs sue individually and on behalf of a class similarly situated individuals. TAC ¶¶ 28-32, 265.

---

[1] Prior to the Second Circuit's remand, Plaintiffs included a plaintiff (KPFF Investment Inc.) that traded physical platinum and palladium (TAC ¶ 31), but the Second Circuit affirmed the District Court's dismissal of that plaintiff's antitrust claim because it was not an efficient enforcer of the antitrust laws. *See In re Platinum & Palladium Antitrust Litig.*, 61 F.4th 242, 259 (2d Cir. 2023).

To prove their antitrust claim, Plaintiffs must show by a preponderance of the evidence that—

(1) Defendants agreed to rig, fix, and/or manipulate the Fixing and NYMEX platinum and palladium contracts (the "violation"); and

(2) Defendants' alleged conspiracy caused injury to Plaintiffs and members of the Class, by causing Plaintiffs and members of the Class to sell their NYMEX contracts for less than they would have received had Defendants not conspired ("causation" and "injury").[2]

Plaintiffs also will have the burden of proving by a preponderance of the evidence the extent of their damages arising from Defendants' alleged violation of the antitrust law, if any.

To prove their CEA claim for manipulation or manipulative device,[3] Plaintiffs must show by a preponderance of the evidence that—

(1) Defendants possessed the ability to influence market prices for NYMEX platinum and palladium contracts;

(2) Artificial prices existed for NYMEX platinum and palladium contracts;

(3) Defendants caused the prices of NYMEX platinum and palladium contracts to be artificial; and

(4) Defendants specifically intended to cause artificial prices for NYMEX platinum and palladium contracts.[4]

Plaintiffs also will have the burden of proving by a preponderance of the evidence the extent of their damages, if any.

To establish secondary liability for aiding and abetting a violation under the CEA, Plaintiffs must show by a preponderance of the evidence that Defendants—

(1) Had knowledge of the principal's intent to violate the CEA;

---

[2] *See Gelboim v. Bank of Am. Corp.*, 823 F.3d 759, 770 (2d Cir. 2016) (holding that antitrust violation and injury are distinct elements to an antitrust claim); *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 395 U.S. 100, 114 n.9 (1969) ("[Plaintiff's] burden of proving the fact of damage . . . is satisfied by its proof of some damage flowing from the unlawful conspiracy; inquiry beyond this minimum point goes only to the amount and not the fact of damage. It is enough that the illegality is shown to be a material cause of the injury . . . .").

[3] Plaintiffs had pleaded manipulative device claim based on "false reports," but this Court dismissed that theory of liability under a manipulative device claim. *See In re Platinum & Palladium Antitrust Litig.*, 2017 WL 1169626, at *36 (S.D.N.Y. Mar. 28, 2017) ("*Platinum I*").

[4] *See Platinum I*, 2017 WL 1169626, at *31 (quoting *In re Amaranth Nat. Gas Commodities Litig.*, 730 F.3d 170, 173 (2d Cir. 2013)). *See also Commodity Futures Trading Comm'n v. Gorman*, 2023 WL 2632111, at *6 (S.D.N.Y. Mar. 24, 2023) (manipulative device claim requires satisfaction of the price manipulation elements).

      (2) Intended to further the violation; and

      (3) Committed some act in furtherance of the principal's objective.[5]

Plaintiffs also will have the burden of proving by a preponderance of the evidence that "the agent was acting in the capacity of an agent when he or she committed the unlawful acts and that the agent's actions were within the scope of his or her employment."[6]

    Further, to proceed as a class, Plaintiffs will be required to meet all the requirements of Federal Rule of Civil Procedure 23(a) and (b)(3).[7]

    Major issues of law and fact in this action will include, among others:

(i)     Whether Defendants and their co-conspirators engaged in a combination or conspiracy to fix, suppress and/or otherwise manipulate platinum and palladium prices in violation of the Sherman Act and/or CEA;

(ii)     The nature and character of the acts performed by Defendants and their co-conspirators in furtherance of the alleged conspiracy;

(iii)     The identity of any co-conspirators, outside of the named Defendants, in the alleged conspiracy;

(iv)     The duration of the alleged conspiracy;

(v)     Whether Defendants and their co-conspirators caused injury to the business or property of Plaintiffs and members of the proposed Class;

(vi)     Whether Defendants and their co-conspirators concealed the conspiracy's existence from Plaintiffs and members of the proposed Class; and

(vii)     The amount of damages sustained by Plaintiffs and members of the proposed Class, if any.

    ***Defendants' statement.*** Defendants are banks and companies that were members of the LPPFC and participated on the twice-daily conference calls. The calls functioned as a "Walrasian" auction, during which the banks set forth their buying and selling interest in physical platinum and palladium at various prices until they discovered the equilibrium price. TAC ¶¶ 58-66. As the TAC states, "[w]hen buy and sell orders were matched, the Chair declared the prices for platinum and palladium fixed." TAC ¶ 64.

---

[5] *Platinum I*, 2017 WL 1169626, at *36.

[6] *Platinum I*, 2017 WL 1169626, at *37 (internal quotations and cite omitted).

[7] As stated in Plaintiffs' May 19, 2023 letter (ECF No. 266 n.1), Plaintiffs will no longer pursue a claim for injunctive relief under the antitrust law, and thus do not intend to seek certification of a proposed class under Rule 23(b)(2).

The major factual and legal issues in this case include, but are not limited, to the following:

(i) Whether, in a case concerning alleged intermittent downward movements in price in platinum and palladium derivatives markets during certain trading days, Plaintiffs' allegations of injury must specify the day and the time when they traded;

(ii) Whether documents, data, and any other evidence demonstrate that there were downward movements in price in platinum and palladium derivatives markets on the days identified by Plaintiffs;

(iii) Whether any alleged downward price movements around the conference calls were the result of natural market dynamics rather than any purported manipulation (*e.g.*, that sellers of platinum and palladium were more likely to place orders on the calls than buyers);

(iv) Whether the pricing patterns alleged by Plaintiffs existed before the start of the class period in January 2008 and after the Fixing calls ceased to exist in 2014;

(v) Whether documents, data, and any other evidence support Plaintiffs' allegations of any conspiracy among Defendants;

(vi) Whether documents, data, and other evidence support Plaintiffs' allegations that the conference calls were "private" and not broadcasted or relayed in real-time to other market participants;

(vii) Whether individualized inquiries are necessary to determine when each putative class member allegedly traded, whether they were injured by alleged any alleged price suppression, and to what extent they were injured; and

(viii) Whether any purported trading losses by putative class members as a result of any purported intermittent price declines must be netted against any gains.

II. **A brief statement by plaintiff as to the basis of subject matter jurisdiction and venue, and a brief statement by each party as to the presence or absence of subject matter jurisdiction and venue. Statements shall include citations to relevant statutes. In addition, in cases for which subject matter jurisdiction is founded on diversity of citizenship, the parties shall comply with the Court's Individual Rule 2(B)(ii).**

Plaintiffs allege violations of the Section 1 of the Sherman Act, 15 U.S.C. § 1, and violations of CEA, 7 U.S.C. §§ 1, *et seq.*, and associated CFTC Rule 180.1. Accordingly, this Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1337(a).

Venue is also proper in this District pursuant to 15 U.S.C. §§ 15(a), 22 and 28 U.S.C. §§ 1391(b), (c), and (d) because Plaintiffs allege that all Defendants during the putative class period resided, transacted business, were found, or had agents in this District, and a substantial portion of the affected interstate trade and commerce discussed herein has been carried out in this

District. Moreover, the NYMEX—where NYMEX palladium and palladium futures and options are traded and the prices of which were allegedly manipulated—is in this this District.

**III.     A brief description of any (i) motions that any party seeks or intends to file, including the principal legal and other grounds in support of and opposition to the motion, (ii) pending motions, and (iii) other applications that are expected to be made at the status conference.**

    (A)     <u>Defendants' Proposed Motion(s) to Dismiss the TAC</u>

On May 12, 2023, Defendants filed a letter stating their intention to move to dismiss the TAC for failure to plead antitrust and actual injury under the CEA. The principal legal bases for that motion are set forth in Defendants' May 12, 2023 pre-motion letter. ECF No. 264.

On May 19, 2023, Plaintiffs filed a letter responding to Defendants' May 12 letter, and opposing the filing of any motions against the TAC. The principal legal bases for their opposition are set forth in Plaintiffs' May 19, 2023 pre-motion letter. ECF No. 266.

    (B)     <u>Plaintiffs' Motion to Amend Case Management Order No. 1</u>

Plaintiffs will move to amend Case Management Order No. 1 (ECF No. 32) to substitute DiCello Levitt LLC for Labaton Sucharow LLP. The principal bases for the motion are that (1) the primary antitrust attorneys previously associated with Labaton Sucharow LLP are now associated with DiCello Levitt LLC; (2) the antitrust attorneys at DiCello Levitt have substantial experience leading and litigating complex antitrust class actions, including those involving financial products; and (3) DiCello Levitt LLC will commit the resources—financial and personnel—to vigorously prosecute claims on behalf of Plaintiffs and the Class.

    (C)     <u>Lifting the Discovery Stay</u>

On April 21, 2015, this Court stayed discovery during the pendency of Defendants' motions to dismiss. ECF No. 48. That stay has remained in effect since then, and thus, no discovery has taken place.

Plaintiffs will request that the stay be lifted. Since the first complaint was filed in November 2014, nearly 8.5 years have lapsed without a single document being produced. Given the Second Circuit's decision and this Court's prior decision in *Platinum I*, the parties should begin discovery in earnest. As explained in Plaintiffs' May 19, 2023 response to Defendants' pre-motion letter, Plaintiffs dispute Defendants' contention that recent authority from the Second Circuit requires a re-examination of the sufficiency of Plaintiffs' antitrust or CEA injury allegations. *See* ECF No. 266.

Defendants oppose Plaintiffs' request to lift the discovery stay because they believe that recent Second Circuit authority requires this Court to re-examine whether Plaintiffs have adequately alleged antitrust injury and actual injury under the CEA and that, in light of this controlling precedent, Plaintiffs' claims cannot proceed. Defendants are prepared to file that dispositive motion promptly. Defendants contend that the likelihood of dismissal strongly

militates in favor of continuing the stay of discovery to prevent the parties and the Court from expending resources unnecessarily.

IV. **A brief description of any discovery that has already taken place, and any discovery that is likely to be admissible under the Federal Rules of Evidence and material to proof of claims and defenses raised in the pleadings. (This is narrower than the general scope of discovery stated in Rule 26(b)(1)).**

On April 21, 2015, this Court stayed discovery during the pendency of Defendants' forthcoming motions to dismiss. ECF No. 48. As a result, no discovery has taken place.

In the event the discovery stay is lifted, Plaintiffs intend to serve document and other discovery requests on Defendants as soon as practicable.

V. **A computation of each category of damages claimed, see Fed. R. Civ. P. 26(a)(1)(A)(iii).**

Plaintiffs maintain that calculating damages in this action, as in most antitrust and CEA cases, will require the production and analysis of substantial volumes of transactional data from Defendants and third parties. Plaintiffs also maintain that calculating damages in this action will also require significant input from experts. Accordingly, Plaintiffs do not have an estimate of total damages at this time.

VI. **A statement describing the status of any settlement discussions and whether the parties would like a settlement conference.**

To date, there have been no discussions between the parties concerning possible settlement. Plaintiffs, however, remain open to such discussions.

VII. **Any other information the parties believe may assist the Court in resolving the action.**

Nothing beyond that mentioned in response to topics I-VI, above.

Respectfully submitted,

s/
Michael Dell'Angelo
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: 215-875-3000
mdellangelo@bm.net

s/
Gregory S. Asciolla
Matthew J. Perez
DICELLO LEVITT LLP
485 Lexington Avenue, Suite 1001
New York, NY 10017
Tel: 646-933-1000
gasciolla@dicellolevitt.com
mperez@dicellolevitt.com

*Counsel for Plaintiffs*

s/
Richard C. Pepperman II
Jonathan S. Carter
Mark A. Popovsky
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
(212) 558-4000
peppermanr@sullcrom.com
carterj@sullcrom.com
popovskym@sullcrom.com

*Counsel for Defendant Goldman Sachs International*

s/
Damien J. Marshall
Leigh M. Nathanson
Laura Harris
Brian Donovan
KING & SPALDING LLP
1185 Avenue of the Americas
New York, NY 10036
(212) 556-2100
dmarshall@kslaw.com
lnathanson@kslaw.com
lharris@kslaw.com
bdonovan@kslaw.com

*Counsel for Defendant HSBC Bank USA, N.A.*

s/
Robert Houck
John Friel
CLIFFORD CHANCE US LLP
31 West 52nd Street
New York, NY  10019-6131
(212) 878-8000
robert.houck@cliffordchance.com
john.friel@cliffordchance.com

*Counsel for Defendant ICBC Standard Bank Plc*

s/
Peter Farrell
Michael Williams
KIRKLAND & ELLIS LLP
601 Lexington Ave
New York, NY 10022
(212) 446-4800
peter.farrell@kirkland.com
michael.williams@kirkland.com

*Counsel for Defendant BASF Metals Ltd.*